EDWARD S. SMITH, Circuit Judge.
 

 In this pre-award Government contracts case appellant, the United States Government, appeals from an order of the United States Claims Court holding invalid, on the grounds that the notice was constitutionally defective, a notice of suspension from procurement action of appellee Electro-Methods, Inc. (Electro), issued by the United States Department of the Air Force (Air Force). This court on January 11, 1984, stated its decision that the Claims Court order was in error, and that this court’s stay of that order would continue until this opinion was issued. We issue our opinion today, affirming the Claims Court in part but reversing on the validity of the suspension, and remand with instructions that the Claims Court vacate its order in this regard.
 

 Issues
 

 We face first dual issues of jurisdiction: (1) whether this court may assert jurisdiction over the Government’s appeal, and, if so, (2) whether the Claims Court properly entertained jurisdiction over Electro’s suit. The third and major issue we face is whether the Claims Court erred in holding that the suspension notice violated Electro’s constitutional right to due process. Finally, we decide whether the Claims Court was correct in declining to refer Electro’s proposed suspension to the Small Business Administration (SBA). We hold affirmatively on the two jurisdictional issues, reverse and remand with instructions to vacate on the constitutional issue, and affirm on the SBA issue.
 

 Background
 

 A summary of the facts material to this appeal is as follows:
 
 [1]
 
 Electro manufactures and sells parts for jet aircraft engines. In 1982 78 percent of its total sales ($21 million out of $27 million) were directly to the United States military services, and 11 percent ($3.05 million out of $27 million) were to Pratt & Whitney Aircraft, Inc., a subsidiary of United Technologies, Inc. Pratt & Whitney also competitively bids on sales of jet aircraft spare parts to the Air Force. At the time Electro was suspended from future contracting with the Government (August 2, 1983), Electro had, by its count, bids outstanding to at least 29 Air Force solicitations on which Electro believed it was low bidder. By count of the court below, this figure was 28 as of September 26, 1983, with 13 of these being ready for award, and Electro low bidder on 3 of the 13.
 
 [2]
 

 On June 8 and June 9, 1983, the United States District Courts for the District of Connecticut and the Southern District of Florida, respectively, separately issued search warrants based in each case on an affidavit by an FBI agent, to search certain
 
 *1473
 
 premises (including Electro’s) and to seize certain property. These affidavits set forth the results of an FBI investigation, itself begun after review of the results of an investigation by the United Technologies internal security unit. The FBI's investigation had caused it to conclude that probable cause existed that Electro had improperly obtained blueprints and pricing data from Pratt & Whitney, and then bid against Pratt & Whitney in response to Air Force solicitations. A grand jury investigation is pending.
 

 The Air Force learned of the search warrants in June 1983 from one of Electro’s competitors. Thereafter, the Air Force Debarment and Suspension Review Board (board) obtained copies of the affidavits from the FBI. Electro likewise obtained copies from the respective courts. Concerned about rumors that bids on Electro’s Air Force contracts were being put “on hold,” counsel for Electro requested a meeting with the general counsel of the Air Force on July 11, 1983. On July 7 Electro submitted a 9-page memorandum discussing the allegations in the affidavits and stating that the results of an Air Force investigation would show none of them to be true. In connection with Electro’s bids possibly being put “on hold,” the memorandum discussed the applicable suspension regulations.
 

 Counsel for both Electro and the Air Force, along with Air Force procurement officials, met on July 11, 1983. The Air Force explained in detail the suspension and debarment procedures and stated that no hold had been placed on contracts on which Electro had bid, but that the Air Force was conducting its own review of the affidavits and was considering what might be appropriate action. In such review and consideration of action the Air Force told Electro that it would use only publicly available information which could be released if the board recommended suspension, and that grand jury information would not be used. Electro in turn provided the Air Force with some relevant computer printouts and summaries and asked if it could provide further information. The Air Force told Electro it could provide whatever additional information it deemed appropriate, and on July 20, 1983, Electro did indeed provide the Air Force with follow-up information.
 

 On July 22, 1983, counsel for Electro again met with Air Force counsel and procurement officials. At this meeting Electro’s counsel presented Electro’s position, including a number of documents designed to refute one of the affidavits. The Air Force stated that debarment and suspension were still under review, and that the Air Force would consider any additional information submitted. Electro supplied the Air Force with additional information (newspaper articles and a videotape) on July 25, and then on July 28 submitted an affidavit by Electro’s president denying any determination of prices to be bid on contract orders for spare parts.
 

 On July 26 and 28 the board met and considered the affidavits, all of Electro’s submitted material to date, and a memorandum prepared by Air Force counsel. The board determined that “adequate evidence,” akin to probable cause for a search warrant, existed of wrongdoing and recommended suspension of Electro, among others. The board forwarded this recommendation along with the entire record to the Air Force debarment and suspension official, who reviewed the material and notified Electro on August 2, 1983, that it was suspended from future contracting with any agency of the United States Government. The notice informed Electro that, within 30 days of receipt of the notice, it could submit, whether in person or in writing or through a representative, information and argument in opposition to the suspension. If this information raised a genuine factual dispute, the Air Force would conduct fact-finding, unless the Department of Justice advised that substantial interests of the Government in pending or contemplated legal proceedings would be prejudiced.
 

 On September 6, 1983, Electro responded with an extensive written submission, including affidavits rebutting what had been alleged in the FBI affidavits, and a demand
 
 *1474
 
 for a hearing no later than September 14, if the suspensions were not lifted by September 9. Electro declined to make a personal appearance during this period (August 2-September 6), however. On September 8 counsel for the board notified the Department of Justice of the suspension and hearing request, including Electro’s demand that the hearing include an examination of the two FBI agents, among other persons. On the same day counsel for the board informed Electro that its submission had raised a “genuine dispute over facts material to the submissions,” but that this did not warrant immediate termination of the suspensions. On September 26 Justice advised counsel to the board that Justice had no objection to a hearing before the board concerning material already released by the board, but that examination of the FBI agents or of data obtained by the FBI “would severely hamper an on-going criminal investigation.”
 

 Electro brought suit in the Claims Court on September 19, 1983, seeking “emergency” injunctive and declaratory relief to prevent award of contracts for jet engine spare parts on the ground that it had been unlawfully suspended under Defense Acquisition Regulation (DAR) § 1-606 procedures, 32 C.F.R. § 1-106 (1983). After a hearing on September 20, subsequent briefing, and argument on September 29, the Claims Court ordered, and then detailed by written opinion,
 
 [3]
 
 that the August 2, 1983, suspension of Electro was defective, invalid, and not to be given further effect, on the grounds that the notice lacked a date certain on which Electro’s response could be heard. The Government filed a motion for stay of the Claims Court order pending appeal to this court. The court below denied the stay. This court on appeal first denied and then, upon reconsideration, granted the stay, docketing the case for oral argument in early January 1984. After argument this court on January 11 communicated to the parties its decision that the Claims Court order was entered in error and that this court’s stay of that order would continue in effect until this opinion issued.
 

 Opinion
 

 1.
 
 This Court’s Jurisdiction
 

 Electro argues that this court lacks jurisdiction to review the Claims Court order of September 29, 1983, and opinion of October 3, because, among other theories, that order and opinion do not constitute a final judgment appealable to this court.
 
 [4]
 
 Electro notes that in a subsequent Claims Court order dated October 17, 1983, in which that court denied the Government’s request for a stay pending appeal, the lower court also declined to make entry of judgment because its September 29 order and October 3 opinion “do not make final disposition of plaintiff’s [Electro’s] complaint.” The Government counters that, with the exception of the collateral matter of attorney fees and costs, the Claims Court September 29 order and subsequent opinion were indeed final. This is because they granted the most important relief Electro sought — invalidation of the suspension— and addressed (by denying) the other relief Electro sought — prohibition of award of contracts based upon the pending bid solicitations to anyone other than Electro. We agree with the Government on this point, and find that the Claims Court decision here appealed is a final decision which, for all practical purposes, ends the litigation on the merits and leaves the lower court nothing to do but execute the judgment.
 
 [5]
 
 We
 
 *1475
 
 therefore possess jurisdiction to review this case.
 

 2.
 
 The Claims Court’s Jurisdiction
 

 The Government contends that the Claims Court lacked jurisdiction to entertain Electro’s suit for equitable relief because that suit allegedly concerned Electro’s suspension, a matter which the Government argues is separate and distinct from the bid solicitation process over which the Claims Court and its predecessor the Court of Claims have traditionally exercised jurisdiction.
 
 [6]
 
 This jurisdiction, which the Federal Courts Improvement Act of 1982 expanded to authorize the grant of equitable relief, extends to the Government’s “implied contract to have the involved bids fairly and honestly considered.”
 
 [7]
 
 The court below, after a thorough discussion of the type of “contract claim” over which the Claims Court’s equitable power may properly be exercised, asserted jurisdiction over Electro’s claims. Electro urges that we affirm that holding.
 

 We do affirm, noting the specific factual circumstances of this pre-award case. When Electro filed its suit below on September 19, 1983, it listed 32 Air Force solicitations for spare parts on which it had bid.
 
 [8]
 
 Subsequent factual investigation, as noted above, whittled down this number. Nevertheless, at the time Electro asserted its claims it stood on solid ground as regards its implied contractual relationship with the Government, which by soliciting and receiving Electro’s bids had warranted that it would fairly and honestly consider them. The fact that Electro’s particular claims concerned its allegedly unfair suspension under DAR § 1-606 does not change this analysis, because the effect of that suspension was (or would have been) to cause Electro to lose the award of contracts on which it
 
 had already bid
 
 and on which it was, at least in some instances, low bidder. We therefore affirm the Claims Court on its exercise of jurisdiction over this case.
 
 [9]
 

 3.
 
 The Validity of the Suspension
 

 The Claims Court held that the August 2 suspension notice was defective and invalid because it fixed no date certain on which Electro could respond to the Air Force’s allegations, thus depriving Electro of due process of law. While we note with apnroval the trial court’s exposition of the concept of due process, which we set forth below, we draw the opposite legal conclusion after a thorough review of the factual record before us, and hence reverse:
 

 The content of the due process requirement in a particular instance is determined on the facts specifically involved. The adequacy of the procedures are not to be based on the validity of general regulations, but upon the facts of the case.
 
 Mathews v. Eldridge,
 
 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Due process, unlike some legal rule, is not a technical conception with a fixed content unrelated to time, place and circumstances.
 
 Cafeteria Workers v. McElroy,
 
 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Due process is flexible and calls for such procedural protections as the particular situation de
 
 *1476
 
 mands.
 
 Morrissey v. Brewer,
 
 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).
 

 Electro,
 
 3 Cl.Ct. at 509.
 

 In our summary of the factual background set forth above, we have described in considerable detail the two meetings, on July 11 and July 22,1983, which counsel for Electro had with Air Force counsel and officials prior to suspension. We have noted the extensive information and materials which Electro then submitted to the Air Force, and which went before the board and the suspension official, prior to suspension. We have also noted Electro’s extensive response 30 days thereafter. Electro declined to appear in person again before Air Force officials within this 30-day period. Moreover, after having determined that Electro’s September 6 response did raise a genuine factual dispute and having thereafter (on September 26) received advice from the Department of Justice that it had no objection to a hearing on the record already before the board, the board offered Electro a fact-finding conference or hearing, within these limitations. Electro at this point declined the offer, since it had already filed suit in the Claims Court and since the proffered hearing could not include examination of the FBI agents.
 

 Based on these facts and the voluminous record which Electro managed, within approximately an 8-week time (pre- and post-suspension) to put before the board, we cannot conclude, as did the trial court, that the circumstances of Electro’s temporary suspension constituted a violation of its due process rights. Every bit of evidence which was before the board and suspension official — including, most notably, the two FBI affidavits — was likewise available to, and rebutted by, Electro. Electro was as well fully aware of the scope and subject matter of the investigation. The concept of due process cannot be extended so far, in the circumstances of this case, as to mandate that a “meaningful” hearing include permitting the contractor to subpoena and examine FBI agents involved in an on-going criminal investigation, as well as other Government and industry officials, to prove its case.
 
 [10]
 
 In these circumstances it is not a requisite of due process that the suspension board have subpoena powers. The delicately balanced scales of due process should not tip so far in favor of the contractor. We therefore reverse the court below on this issue and remand with instructions to the Claims Court to vacate its order and opinion concluding the contrary.
 
 [11]
 

 4.
 
 SBA Certification
 

 Electro urges upon appeal, as it did before the court below, that its suspension was invalid because the suspension official violated the requirements of the Small Business Act
 
 [12]
 
 by unilaterally determining, without referral to the SBA, that Electro lacked business honesty and integrity such that its responsibility as a Government contractor was affected. The Claims Court correctly held that the Air Force’s suspension of Electro had nothing to do with Electro’s status as a small business enterprise, but everything to do with its possible involvement in criminal activities.
 
 [13]
 
 We therefore affirm on this point.
 

 
 *1477
 
 For the reasons set forth above, we hold that this court has jurisdiction over this appeal; that the Claims Court correctly asserted its jurisdiction over Electro’s suit and correctly declined to refer Electro’s proposed suspension to the SBA; but that the Claims Court erred in declaring the suspension of Electro invalid. We remand and instruct the Claims Court to vacate its order of September 29, 1983, accordingly, effective the date of this opinion, and we hereby terminate as moot this court’s stay of that order.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS TO VACATE IN PART.
 

 [1]
 

 . A complete statement of the facts is contained in the Claims Court opinion.
 
 Cf. Electro-Methods, Inc. v. United States,
 
 3 Cl.Ct. 500, 502-05 (Cl.Ct. 1983).
 

 [2]
 

 .
 
 Id.
 
 at 505.
 

 [3]
 

 .
 
 Id.
 
 at 500.
 

 [4]
 

 . The Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25 (1982), added 28 U.S.C. § 1295 to the Judicial Code to define the jurisdiction of this court. Section 1295(a)(3) of title 28 grants this court exclusive jurisdiction “of an appeal from a
 
 final decision
 
 of the United States Claims Court.” (Emphasis supplied.)
 

 [5]
 

 .
 
 Firestone Tire & Rubber Co. v. Risjord,
 
 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1980) (citations omitted).
 
 Cf. Aleut Tribe v. United States,
 
 702 F.2d 1015 (Fed.Cir.1983),
 
 Veach v. Vinyl Improvement Prods. Co.,
 
 700 F.2d 1390 (Fed.Cir.1983) (both concerning appeals of claims found not to be “final decisions” over which this court was empowered to assert jurisdiction).
 

 [6]
 

 .
 
 See, e.g., United States v. Grimberg Co.,
 
 702 F.2d 1362, 1367 (Fed.Cir.1983), and
 
 Keco Indus., Inc. v. United States,
 
 428 F.2d 1233, 192 Ct.Cl. 773 (1970).
 

 [7]
 

 .
 
 Grimberg, supra,
 
 discussing 28 U.S.C. §§ 1491(a)(1) and (a)(3) as added by the Federal Courts Improvement Act.
 
 See
 
 note 4,
 
 supra. See also CACI, Inc.-Fed. v. United States,
 
 719 F.2d 1567 (Fed.Cir.1983).
 

 [8]
 

 .
 
 Electro,
 
 3 Cl.Ct. at 505.
 

 [9]
 

 . The Government also argues that the Claims Court lacked jurisdiction because Electro had failed to exhaust its administrative remedies. We reject this argument, since Electro, in response to the August 2 notice of suspension, had by September 19 presented all the information and pursued the matter as far in substance as it could with the Air,Force, the board, and the suspension official. Although no date for a hearing or fact-finding conference had been set, it was not clear to Electro whether such a hearing or conference would be meaningful (i.e., whether it could examine the two FBI agents).
 
 See, e.g., Bendure v. United States,
 
 554 F.2d 427, 434, 213 Ct.Cl. 633 (1977);
 
 Abbott Laboratories v. Gardner,
 
 387 U.S. 136, 153, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967).
 

 [10]
 

 .
 
 See, e.g., Transco Sec., Inc. v. Freeman,
 
 639 F.2d 318 (6th Cir.),
 
 cert. denied,
 
 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981) (due process not denied as regards Government’s denial of a hearing to a temporarily suspended contractor, where contractor nevertheless provided with opportunity to rebut charges);
 
 Horne Bros. v. Laird,
 
 463 F.2d 1268 (D.C.Cir.1972) (due process denied where temporarily suspended contractor not given opportunity to rebut charges within 1 month of suspension).
 

 [11]
 

 . We need not and do not reach the Claims Court’s holding that DAR §§ l-606.3(c)(2), (5), and (6) are defective because they fail to require the suspension official “to fix a specific date to hear a contractor within a reasonable time after notice of suspension has been given ex parte.”
 
 Electro,
 
 3 Cl.Ct. at 510.
 

 [12]
 

 .
 
 See
 
 15 U.S.C. §§ 637(b)(7)(A) and (C) (1982).
 

 [13]
 

 .
 
 Electro,
 
 3 Cl.Ct. at 508;
 
 Siller Bros. v. United States,
 
 655 F.2d 1039, 1042-44, 228 Ct.Cl. 76 (1981),
 
 cert. denied,
 
 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982).