**ATL, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 84–987.**

United States Court of Appeals, Federal Circuit.

June 8, 1984.

**11.** *Id.* at 852.

Herman M. Braude, Washington, D.C., argued for appellant.

Helene M. Goldberg, Washington, D.C., argued for appellee.

Before MARKEY, Chief Judge, and DAVIS, KASHIWA, BENNETT and SMITH, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this pre-award, post-suspension Government contracts case, appellant ATL, Inc. (ATL), appeals from a decision of the United States Claims Court dismissing, for lack of jurisdiction, ATL's suit to enjoin temporarily the award of two Army Corps of Engineers (Army) contracts to any bidders other than ATL. We affirm.

## Background

ATL submitted low bids, which the Army opened in December 1983 and January 1984, on two Army contracts. During this time—and in fact from July 15, 1983, until beyond the date of ATL's filing suit in the court below—ATL has been suspended from receiving any Government contracts. We have recounted the details of this suspension, which the Department of the Navy (Navy) effected, in our opinion on that subject, *ATL, Inc. v. United States (ATL I)*.[1]

Because of the Navy-initiated suspension, the Army informed ATL by letter dated March 7, 1984, that the Army would not award ATL the two contracts on which it was low bidder. ATL sued in the Claims Court for preliminary injunctive relief pending this court's decision on the validity of the suspension in *ATL I*, and for final injunctive relief if ATL prevailed on its appeal here and the Navy lifted the suspension after a new hearing. The Claims Court granted the Government's motion to dismiss ATL's complaint for lack of jurisdiction;[2] ATL appeals here.

## Opinion

This case differs from the two recent suspension-related cases we have considered, *ATL I* and *Electro-Methods, Inc.*,[3] because, while the suit was filed below *before* the Government issued the awards, it was filed long *after* the Government had effected the suspension, as were the bids at issue filed long after that suspension. While mechanistic application of these facts does not per se determine the Claims Court's jurisdiction, this information is relevant in resolving whether the case is styled a "bid protest" case over which the Claims Court and its predecessor court have long exercised jurisdiction,[4] or whether the case constitutes an Administrative Procedure Act challenge to the Government's suspension action, in which event the case belongs in district court.[5]

ATL contends that its case falls in the bid protest category because the Army

---

1. *ATL, Inc. v. United States*, 736 F.2d 677 (Fed. Cir.1984). *See also* extensive background in the two Claims Court opinions of same title, found at 4 Cl.Ct. 374 (1984) and 3 Cl.Ct. 259 (1983).

2. *ATL, Inc. v. United States*, 4 Cl.Ct. 672 (1984). This opinion contains an excellent summary of the factual background, set forth in the first 2 pages of the slip opinion.

3. *Electro-Methods, Inc. v. United States*, 728 F.2d 1471 (Fed.Cir.1984).

4. *See e.g., ATL I*, at 681–82; *Electro-Methods*, 728 F.2d at 1475; *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed.Cir. 1983); and *Keco Indus., Inc. v. United States*, 428 F.2d 1233, 192 Ct.Cl. 773 (1970). *See also* 28 U.S.C. §§ 1491(a)(1) and (a)(3) (1982).

5. *See ATL I*, at 682; *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970); *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1573–74 (Fed.Cir.1983).

breached its implied-in-fact contract to consider ATL's two bids fairly and honestly. In particular, ATL points to the Army's conduct in soliciting, accepting, opening, listing, publishing as low bids, and requesting extension of, ATL's two offers, as evidence of such an implied contract. The Claims Court, after a careful discussion of both the law relating to jurisdiction and the elements of an implied-in-fact contract, found such a contract not to exist, because of the statutory prohibition against the Government's doing business with suspended contractors.[6] The Government urges that we affirm.

We do affirm, for the reasons set forth in the opinion below. Despite apparent conduct to the contrary, the Army lacked actual authority to bind the Government to a contract with ATL as long as the suspension was in place.[7] ATL's assertion that the statutory prohibition is not absolute because the Army must consider a suspended contractor's bid to determine if it might fall within the statutory "compelling reason" exception to the prohibition[8] does not apply here. There has been no suggestion from either side that the Government ever considered that there might be a "compelling reason to solicit an offer from, [or] award a contract to" ATL.[9]

ATL also contends before this court that the statutory prohibition does not apply to ATL because it was not "suspended" according to the definition of that term, which defines "suspend" as being carried out "pursuant to established administrative procedures."[10] While in *ATL I* we agreed in part with the court below that the Navy's suspension proceeding partially denied ATL of due process, such that the Navy must provide ATL with a new hearing, we did not, nor did the Claims Court, revoke or set aside that suspension.[11] Moreover, the Navy did follow its "established administrative procedures," such as they were, in effectuating the suspension. ATL's position would require that each contracting officer reexamine and second-guess the propriety of any and every suspended contractor's suspension proceeding, a wholly impractical result which we reject in this case.

Finally, ATL urges that the 12-month suspension has expired, such that it is now eligible to receive the Army contracts, because the Navy originally de facto suspended ATL in March 1983.[12] This theory does not hold up on the facts. The Navy opened the four ATL bids at issue in *ATL I* in both March and April of 1983; the Navy under normal procedures would have had 60 days to determine whether the low bidder was responsible, or until May and June of 1983; and, most significantly, ATL received an Army contract in June 1983.[13] In these circumstances we find no de facto suspension which could be considered to have expired, such that the Army would now be authorized to do business with ATL.

We therefore affirm the opinion of the Claims Court, granting the Government's motion to dismiss ATL's suit for lack of jurisdiction.

AFFIRMED.

DAVIS, Circuit Judge, dissenting:

This is not a case in which a would-be bidder has been refused, because another federal agency has already suspended it, the opportunity even to submit a bid; that kind of case is not now before us. Instead, this is a case in which the appellant's bids were received and considered for a measur-

6. 10 U.S.C. § 2393 (1982), set forth in 736 F.2d at 680.

7. *ATL*, 4 Cl.Ct. at 675.

8. 10 U.S.C. § 2393(a)(2).

9. *Id.*

10. 10 U.S.C. § 2393(c)(2).

11. *See* 4 Cl.Ct. at 675.

12. ATL cites the August 9, 1983, Claims Court *ATL* opinion, wherein that court stated that "[i]n effect there was a *de facto* suspension." *ATL*, 3 Cl.Ct. at 272. ATL also cites § 2393(a)(1)(B), allowing the Government to contract with a contractor whose suspension has expired.

13. *See ATL I*, at 679 and 687 n. 52.

able period of time. ATL submitted the two bids involved here to the Corps of Engineers; these were initially accepted along with others, were opened along with the others in December 1983 and January 1984, and found to be the low bids. Not wishing to make an award on the then due dates of March 16th and 21st, the Corps of Engineers asked and received extensions to March 30, 1984, from ATL and the other bidders. It was not until March 7th that the Engineers informed ATL that it would not award that company the contracts so long as the Navy suspension lasted. There was, in short, an acceptance of the bids as such, and some consideration of them for a period of time.

This was enough, in my view, to invoke the "implied contract" theory on which the jurisdiction of the Claims Court over pre-award contract claims, 28 U.S.C. § 1491(a)(1), (3), is said to rest. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1367 (Fed.Cir.1983); *CACI, Inc.-Federal v. United States*, 719 F.2d 1567, 1572–73 (Fed.Cir.1983); *Electro-Methods, Inc. v. United States*, 728 F.2d 1471, 1475 (Fed. Cir.1984); *ATL, Inc. v. United States*, 736 F.2d 677, 681, 682 (Fed.Cir.1984). Here, that implied contract of fair consideration was not simply an agreement "implied in law" but, rather, an implied-in-fact contract based on the mutual consensual transactions of both ATL and the Corps of Engineers. The Claims Court therefore had jurisdiction.

The majority holds that that conclusion is thwarted by 10 U.S.C. § 2393 (1982), prohibiting the Government's doing business with suspended contractors and bidders. Unlike the court, I reject that position because § 2393 expressly defines "suspend" (for contract purposes) to mean "to disqualify, *pursuant to established administrative procedures*" (emphasis added). 28 U.S.C. § 2393(c)(2). We have already held

in *ATL I, supra*, that the Navy's suspension of ATL did *not* occur "pursuant to established administrative procedures", in the only sense in which Congress can have used that phrase, *i.e.*, pursuant to *lawfully* established procedures. Congress could not have meant that a procuring agency can adopt whatever suspension procedures it wishes—no matter how much those procedures depart from statutory or constitutional requirements. *ATL I* holds that thus far the Navy has not given to ATL all the rights to which it is entitled. The Navy's "suspension" cannot as yet be deemed to have been made "pursuant to [properly] established administrative procedures"— and it is therefore still outside the coverage of § 2393.

The majority fears the problem of the Engineers' contracting officers having to "second guess" the Navy but there is no such problem in this case. By March 7, 1984, (the day the Engineers decided it could not award the contracts to ATL), the Claims Court had already specifically held (January 6, 1984) the Navy "suspension" to have been illegal, and this court had already heard the appeal from that decision (the appeal was heard March 5, 1984). Why the Engineers believed, on March 7th, that the "suspension" had to be deemed "pursuant to established administrative procedures" is still a mystery to me.[1]

I would hold that the Claims Court has jurisdiction over this pre-award "contract claim," reverse the ruling below, and remand to the Claims Court to consider the merits of ATL's claim to an injunction.

---

1. I agree with the Comptroller General that "the proper time for determining the effect of a suspension on a firm's eligibility for award is at award time." *Matter of Bauer Compressors, Inc.*, GAO No. B–213973, dated April 23, 1984, slip op. p. 3. In the case before us, no award had been made as of March 7, 1984, and everything up to that date indicated that the Navy's "suspension" was unlawful.