**STERLINGWEAR OF BOSTON, INC., Vi-Mil, Inc., Jerome Danin & Frank Fredella, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 454–86C.**

United States Claims Court.

Jan. 16, 1987.

See also, Cl.Ct., 11 Cl.Ct. 879.

Anthony M. Fredella, Somerville, Mass., for plaintiffs.

Carol N. Park-Conroy, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION ON DEFENDANT'S MOTIONS TO DISMISS, TO VACATE PENDING INJUNCTION, AND FOR EXPEDITED CONSIDERATION

REGINALD W. GIBSON, Judge:

### I. *Statement of the Case*

This opinion addresses certain bench rulings made on December 31, 1986, in which the court denied defendant's then pending motion to dismiss on jurisdictional grounds, reserved decision on defendant's motion to dismiss on the merits, and denied defendant's motion to vacate a currently pending preliminary injunction.[1] On July 22, 1986, plaintiffs, Sterlingwear of Boston, Inc. (Sterlingwear), Vi-Mil, Inc., Jerome Danin, and Frank Fredella, filed petitions in this court seeking a temporary restraining order, a preliminary and a permanent injunction and other equitable relief. Plaintiffs sought to enjoin the Defense Logistics Agency (DLA) of the Department of Defense from awarding any contract pursuant to the invitation for bid (IFB) number IFB–DLA–100–85–B–1327, *i.e.*, a contract for the manufacture of 10,624 women's overcoats with W-removable liners. Plaintiff Sterlingwear was the apparent low bidder on this contract, but had been denied the actual award based upon the contracting officer's (CO) finding of nonresponsibility. Upon this decision by the CO, the DLA therefore contemplated awarding the subject contract to the next lowest responsible bidder, Dale Fashions, Inc. In order to enjoin this latter award, plaintiffs have initiated appropriate litigation in this court.

Since the filing of this law suit, much has happened to exacerbate matters. First, at the time the initial temporary restraining order was sought on July 22, 1986, plaintiffs had already appealed their nonresponsibility finding to the U.S. Small Business Administration (*see* 15 U.S.C. § 637(b)(1)(F) (1982)), and were in the process of being issued a Certificate of Competency (COC), which would have entitled Sterlingwear to an award of the contract. The issuance of the COC was suspended, however, when the DLA moved, anticipatorily, to recommend the group debarment of each of the plaintiffs here (*see* 48 C.F.R. § 9.406–3(c)(7) (1986)). Plaintiffs were informed of the SBA decision to suspend the issuance of the Sterlingwear COC, pending the out-

---

**1.** The remaining portions of defendant's motion to dismiss relative to the merits were also then converted to a motion for summary judgment. *See infra* text at 4.

come of the debarment proceeding, by letter dated July 15, 1986. In order, therefore, to maintain the status quo in this court pending the outcome of the plaintiffs' debarment proceeding, a hearing on plaintiffs' application for a preliminary injunction was held on July 31, and August 1, 1986. Following that hearing, on August 13, 1986, a preliminary injunction was issued temporarily preventing the DLA from awarding the subject contract to Dale Fashions, Inc. That preliminary injunction remains in effect to this date. *See* Order dated August 13, 1986, *Sterlingwear of Boston, Inc. v. United States*, 10 Cl.Ct. 644 (1986).

Subsequently, on November 18, 1986, the court was informed by defendant that all named plaintiffs in this action had received notice of their debarment by DLA. Following notice of the plaintiffs' debarment, the court convened a status conference which was held on November 25, 1986. The purpose of that conference was to establish a mode of proceeding in this court in light of the plaintiffs' debarment. During that hearing, the issue of the court's continuing jurisdiction to consider the treatment of the plaintiffs' bid, given the circumstances occurring during the debarment hearings, was challenged by the defendant. Plaintiffs, on the other hand, strenuously asserted that jurisdiction continued in this court to the extent there were substantial procedural defects in the debarment proceeding which they could prove had prejudiced the fairness of the treatment of their bid. Because of this apparent controversy surrounding the court's continuing jurisdiction, the court instructed the parties to brief the jurisdictional issue. In response to the court's order, on December 5, 1986, plaintiffs submitted a brief addressing continuing jurisdiction in this court, and defendant submitted its brief, by way of a motion to dismiss, on December 12, 1986.

Prior to any decision on its motion to dismiss, defendant further filed on December 19, 1986, two additional motions, *infra*. These two motions, along with defendant's motion to dismiss, are the subject of this opinion. First, defendant filed a motion to vacate the pending preliminary injunction inasmuch as it contends that the debarment of plaintiffs on November 14, 1986, precludes further relief in this court. As a consequence, sole jurisdiction now lies in the United States District Court. Further, that to continue the preliminary injunction would be particularly injurious to the government because the next lowest bidder, Dale Fashions, Inc., refuses to extend its bid and the stipulated second lowest price beyond December 31, 1986, if the injunction were to remain in effect. The only other alternative, contends the government, should the preliminary injunction remain in place, would be for it to cancel the solicitation in its entirety. Second, because of the nearness of the December 31, 1986 deadline, defendant also moved for expedited consideration of its motion to vacate.

In order to accommodate the defendant's perceived December 31, 1986 deadline, the court scheduled oral argument on the defendant's motions to vacate and to dismiss at 11:00 a.m. on December 31, 1986. Both parties appeared and presented arguments similar to those previously outlined in their written submissions of December 5 and 19. Defendant also presented one witness, an attorney for Dale Fashions, in order to corroborate its position that as of December 31, 1986, should the injunction not be vacated, Dale Fashions would withdraw its bid. In addition, plaintiffs' counsel represented to the court that since plaintiffs were found nonresponsible by the CO, and since the imposition of the pending injunction, defendant had in any event already negotiated contracts with Dale Fashions for some 6,000 of the very same women's overcoats which are the subject of the contract in issue in this litigation. Defendant did not dispute the substance of this contention, except to state that it preferred to characterize the latter negotiated contracts as ones for coats "in excess of the quantities required by [the] ... IFB [in issue]." [2]

2. Transcript of December 31, 1986, at 60.

Following oral argument, a short recess was taken to consider the aforementioned arguments and the evidence presented by the parties. Thereafter, and because of the impending time deadline asserted by the defendant, the court ruled from the bench denying defendant's motion to dismiss on jurisdictional grounds, and denying defendant's motion to vacate the pending preliminary injunction. The court, however, did grant defendant's motion for expedited consideration. Upon a further oral motion by the defendant, the court then converted the remaining portion of defendant's motion to dismiss, relating to the merits of the plaintiffs' complaint, to one for summary judgment governed by the provisions of RUSCC 56. Plaintiffs were then given 14 days in which to respond to the now converted motion for summary judgment. Lastly, the court announced that the instant opinion would issue outlining more completely the court's rationale for denying the defendant's motion, *supra*.

## II. *Discussion*

### A. *Defendant's Motion To Dismiss For Lack Of Jurisdiction*

Defendant's motion to dismiss for lack of jurisdiction is premised primarily on the contention that the debarment process, and hence the debarment proceeding, is an administrative event separate and distinct from, and in no way impacts upon, the unique implied contract to fully and fairly consider bids which arises from the issuance of an IFB and the submission of a bid in response thereto. As a consequence thereof, avers defendant, the right to a properly conducted debarment proceeding is not a term of the government's implied duty to fully and fairly consider a bid, hence Tucker Act jurisdiction is wanting in this court on any issues stemming from the conduct of the debarment proceeding. From the foregoing, it follows, says defendant, that any challenge to the debarment proceeding is *not* a matter within the scope of this court's *pre-award equitable jurisdiction*. The impact of the debarment, according to defendant, is to defini-

tively render Sterlingwear ineligible for contract award, thus making plaintiffs' initial challenge to the CO's finding of nonresponsibility moot. Moreover, avers defendant, the debarment, *ipso facto*, "demonstrates conclusively" that there was a rational basis to reject Sterlingwear's bid on the basis of nonresponsibility. Therefore, in order to challenge this result, says defendant, plaintiffs' remaining relief is in the U.S. District Court, and not in this court.

Plaintiffs, of course, take exception to the defendant's self-serving characterization of the scope of what does and does not come within the confines of the government's implied contract to fully and fairly consider plaintiff-Sterlingwear's bid. In particular, plaintiffs dispute the contention of defendant that the sequence of events in this case, beginning with the submission of their bid through to the debarment decision, are not all governed by the government's implied duty to fully and fairly consider their bid which initially arose at the time the bid was submitted. Plaintiffs rely primarily for this view on the case of *ATL, Inc. v. United States*, found at both 4 Cl.Ct. 374 (1984), and *affirmed in part* and *reversed in part* at 736 F.2d 677 (Fed.Cir. 1984). In *ATL*, plaintiffs argue, both this court and the Federal Circuit agreed that when a suspension from contracting (analogous to a debarment) occurs *after* the implied contract arises, and *after* jurisdiction is established in this court, that jurisdiction extends to a review of that suspension decision to the extent it deprives the bidder of its right to a full and fair consideration of its bid. More specifically, as in *ATL*, that jurisdiction encompasses enforcement of the government's implied contractual duty to conduct all administrative events relative to bid consideration in conformity with all applicable statutes and regulations, be they procedural, as in a debarment proceeding, or otherwise.

█ From a review of the parties' arguments, it is clear that the main point of contention for jurisdictional purposes is whether the debarment, given the unique

sequence of events in this case, is or is not an administrative event which was governed by the terms of the implied contract to fully and honestly consider plaintiffs' bid. If the debarment was such an administrative event, connected to the overall consideration of the plaintiffs' bid, then that jurisdiction which was firmly established at the time plaintiffs filed suit, prior to the debarment, would encompass a review of the subsequent disbarment. On the other hand, if the debarment cannot be fairly viewed as an administrative event which was connected to, or impacted upon, the government's consideration of the plaintiffs' bid, then that jurisdiction which was fully established at the time plaintiffs filed suit, would not encompass a review of any aspect of the debarment itself or the debarment proceeding in particular. We believe that given the unique facts and circumstances of this case, plaintiffs' debarment *was* an event governed by the terms of the government's implied contract to fully and fairly consider plaintiffs' bid, and is, therefore, *within carefully defined limits*, a matter susceptible to review in this court.

█ The United States Court of Appeals for the Federal Circuit, whose precedent is binding on this court, has repeatedly held, since its creation in 1982, that the pre-award equitable jurisdiction of this court (28 U.S.C. § 1491(a)(3) (1982)) is grounded on the implied contract to fully and fairly consider all bids which duty arises when the government issues an IFB and a bidder responds thereto with a responsive conforming bid. *United States v. Grimberg*, 702 F.2d 1362 (Fed.Cir.1983); *CACI, Inc.— Federal v. United States*, 719 F.2d 1567 (Fed.Cir.1983); *Electro-Methods, Inc. v. United States*, 728 F.2d 1471 (Fed.Cir. 1984); *ATL, Inc. v. United States*, 736 F.2d 677 (Fed.Cir.1984); *National Forge Co. v. United States*, 779 F.2d 665 (Fed.Cir.1985); *NKF Engineering, Inc. v. United States*, 805 F.2d 372 (Fed.Cir.1986). This carefully

crafted enunciation of the Claims Court's equitable jurisdiction, most frequently premised on the *Grimberg* case, actually has its origin in the Congressional mandate stemming from the Federal Courts Improvement Act of 1982 (FCIA), Pub.L. No. 97–164, 96 Stat. 25 (1982), that the U.S. Claims Court was to exercise pre-award equitable jurisdiction in government contract cases analogous to that then exercised by U.S. District Courts pursuant to what had become known as the "*Scanwell* Doctrine." [3] *See* S.Rep. No. 275, 97th Cong., 2d Sess. 23 (1981), *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 33; H.R.Rep. No. 312, 97th Cong., 1st Sess. 43 (1981). *See also CACI*, 719 F.2d at 1573. In conjunction with this specific grant of equitable powers by the FCIA, this court also possesses a residual pre-award jurisdiction, inherited from the Court of Claims precedent, to entertain money claims for bid preparation costs by disappointed bidders similarly alleging that their bids were not treated in accordance with the government's implied duty to fully and honestly consider all bids. *See Keco Industries v. United States*, 192 Ct.Cl. 773, 428 F.2d 1233 (1970); *Grimberg*, 702 F.2d at 1367 n. 8.

█ In substance, therefore, it is now clear beyond doubt that this court possesses the authority to grant complete equitable and monetary relief in pre-award government contract cases brought by disappointed bidders. On the other hand, we also acknowledge that the development of the parameters of that authority as to what constitutes the "implied contract" to "fully and honestly" consider all bids, has been warmly contested. In resolving the pending issue before us, however, we discern no lack of supportive authority warranting dismissal of the government's jurisdictional contentions. Beginning with the *CACI* case, we find most helpful the court's explanation that standing to assert a violation

---

**3.** The "*Scanwell* Doctrine" refers to the jurisdiction of U.S. District Courts to entertain disappointed bidder suits based on a violation of procurement statutes or regulations pursuant to

the standards of the Administrative Procedure Act. *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970).

of the implied contract does *not* depend upon whether the statute or regulation allegedly violated would *ipso facto* give plaintiff an independent cause of action in this court. Rather, a breach of the implied contract to fully and honestly consider a bid can itself be shown upon *evidence* that a violation of another statute and regulation deprived the plaintiff's bid of full and fair consideration. *CACI,* 719 F.2d 1574. All that is required for standing is that a bidder demonstrate that "if its bid had been fairly and honestly considered, 'there was a substantial chance that [it] would receive an award—that it was within the zone of active consideration.' " *Id., quoting Morgan Business Associates v. United States,* 223 Ct.Cl. 325, 619 F.2d 892, 896 (1980).

One way of viewing the government's jurisdictional contention at bar is to draw analogy to the court's treatment of the standing question in *CACI.* Here, the government in effect asserts that it is *not* within the terms of the implied contract that a contractor receive a fair and proper debarment proceeding, because such proceedings are separate and distinct from consideration of the contractor's bid. This contention is postured because such relief is in the U.S. District Court, which allegedly has sole jurisdiction to consider *independent* causes of action questioning the government's conduct of the debarment proceeding. In other words, argues defendant, there was *no violation* of the implied contract to fully and honestly consider all bids (and hence no injury to plaintiffs within this court's jurisdiction) because plaintiffs could not have asserted in this court a claim for violation of the debarment regulations *independent* of any jurisdiction based on the implied contract. As the Federal Circuit stated in *CACI,* in rejecting a similar argument by the government there, "[t]hese arguments reflect a misconception of the basis of the Claims Court's jurisdiction...." *CACI,* 719 F.2d at 1572.

The government's obsession with the fact that a debarment is technically distinct from bid solicitation procedures is irrele-

vant to a determination of whether a violation of the implied contract to fully and honestly consider plaintiffs' bid occurred. What is relevant is whether plaintiffs can prove a violation of the debarment regulations *as evidence* that their bid was not fully and honestly considered. As succinctly explained by the Federal Circuit in *CACI:*

> The government's alleged violations of statutes and regulations are not directly challenged as such *but instead are relied upon to show a violation of the contractual duty.*

*CACI,* 719 F.2d at 1574 (emphasis added). Failing to note this critical distinction between asserting an actionable violation of the statute or regulation, versus, using *evidence thereof* to show a violation of the implied contract to fully and honestly consider a bid, is precisely where the government's argument misses the mark. The government is arguing the former, the plaintiffs—the latter. To complete the analysis, therefore, the ultimate question is—whether if proven to have been conducted improperly, the debarment deprived the plaintiffs' bid of full and honest consideration.

██ The facts are indisputable that plaintiff-Sterlingwear, was the low bidder on the contract in issue. In fact, were it not for the initiation of the debarment proceeding, plaintiff-Sterlingwear would, in all probability, have received a COC from the SBA. Said COC would have then entitled Sterlingwear, absent a final appeal to SBA headquarters, to an award of the contract in issue. It is apparent, therefore, that absent the initiation of the debarment proceeding, and the subsequent determination of debarment itself, that DLA would have been required to award the contract to Sterlingwear. To the extent, therefore, that the debarment proceedings were conducted in error (plaintiffs aver that the prejudicial error was that the regulation permitting it to cross-examine agency witnesses was not honored), it denied plaintiff Sterlingwear of the full and fair consideration of its bid. It is axiomatic that when a

contractor, who has submitted a responsive bid which would under normal circumstances entitle it to an award of the contract, is denied that contract because of improper administrative conduct on behalf of the government, that contractor, as plaintiff clearly alleges here, has had its bid denied full and honest consideration.[4]

Several latter decisions by the Federal Circuit affirm this reasoning in other pre-award contexts where *evidence* of the violation of other statutes and regulations unreviewable in this court, when challenged on their own, served as the factual predicate for an alleged violation of the implied contract to fully and honestly consider all bids. In *Electro-Methods, Inc. v. United States*, 3 Cl.Ct. 500 (1983), *aff'd in part, rev'd in part*, 728 F.2d 1471 (Fed.Cir.1984), for example, the Court of Appeals affirmed the Claims Court's assertion of jurisdiction over a challenge to a contractor's debarment and suspension by the Air Force. Like the situation at bar, jurisdiction to review the suspension procedure in *Electro-Methods* was challenged by the government as a matter "separate and distinct from the bid solicitation process over which the Claims Court and its predecessor the Court of Claims have traditionally exercised jurisdiction." *Electro-Methods*, 728 F.2d at 1475 (footnote omitted). In language applicable to, and dispositive of, the case at bar, the Court of Appeals there held:

[A]t the time Electro asserted its claims it stood on solid ground as regards its implied contractual relationship with the Government, which by soliciting and receiving Electro's bids had warranted that it would fairly and honestly consider them. The fact that Electro's particular claims concerned its allegedly unfair suspension under DAR § 1–606 does not change this analysis, because of the effect of that suspension was (or would

have been) to cause Electro to lose the award of contracts on which it *had already bid* and on which it was, at least in some instances, low bidder. We therefore affirm the Claims Court on its exercise of jurisdiction over this case.

*Electro-Methods*, 728 F.2d at 1475 (emphasis in original, footnote omitted). It is clear beyond cavil that at the time the plaintiffs' debarment occurred, jurisdiction had long attached in this court because plaintiff-Sterlingwear had long before submitted its bid, and said bid had long before been opened and declared to be the low bid. On these facts, therefore, we believe *Electro-Methods* is dispositive in favor of jurisdiction.

Similarly instructive is the case of *ATL, Inc. v. United States*, 4 Cl.Ct. 374 (1984), *aff'd in part, rev'd in part*, 736 F.2d 677 (Fed.Cir.1984). In *ATL*, the Federal Circuit affirmed the Claims Court's finding of jurisdiction to review a Navy decision to suspend the plaintiff from eligibility for award of Navy contracts. Like plaintiffs at bar, ATL's suspension occurred *after* it had bid and been declared low bidder, and *after* jurisdiction had attached in the Claims Court based on the implied contract to fully and honestly consider plaintiff's bid. On these facts, the Federal Circuit held that while *ATL* would normally only have an *independent* cause of action for such violations in the U.S. District Court, inasmuch as ATL did not know of the suspensions at the time it filed suit, nor had they in fact even been initiated; that ATL had already bid the lowest bids, thus, once jurisdiction had attached, "the long-standing rule in the federal courts is that it [jurisdiction] cannot be ousted by subsequent events." *ATL*, 736 F.2d at 682 (footnote omitted).

Clearly underlying this holding is the reasoning of *CACI* discussed *supra*. That is, where an efficacious implied contract exists, a violation thereof is not dependent

---

**4.** Lest there be any confusion, we do not hold here, nor is it necessary to find, that Sterlingwear *would have* received the contract had the debarment proceeding been properly conducted. Rather, as stated by the court in *CACI*, all that is required is for the bidder to show that "if

its bid had been fairly and honestly considered, 'there was a substantial chance that [it] would have received an award....'" *CACI*, 719 F.2d at 1574, *quoting Morgan Business Associates*, 619 F.2d at 896. This latter finding is what we believe the plaintiffs to be alleging.

upon the violation of a statute or regulation which is itself otherwise independently actionable in the Claims Court. Rather, the implied contract to fully and fairly consider all bids is violated simply by proof that the agency supervising the contracting and solicitation process engaged in illegal administrative activity which substantially prejudiced the plaintiff's bid. We believe the court in *ATL* had this reasoning in mind when it affirmed the Claims Court's finding of jurisdiction. On this basis, inasmuch as an almost identical illegal administrative action is alleged here, we draw support for our finding of jurisdiction from the court's decision in *ATL*.

Defendant's contention that *ATL* is inapposite because the notice of suspension there *followed* the filing of suit, whereas here the notice of *proposed* debarment *preceded* the filing of suit, is not persuasive. The most important event, the formation of the implied contract, had clearly occurred *prior* to any suspension or debarment discussions in *both* cases. At the time *that* implied contract arose, concomitantly so did the government's duty to fully and honestly consider plaintiffs' bid. The filing of suit has been held in no case we are aware of to be an event which effects or mitigates this duty relative to subsequent administrative events.

On the basis of the foregoing, therefore, we believe that the debarment proceedings and the procedures followed therein were administrative procedures subject to the government's implied duty to fully and honestly consider Sterlingwear's bid. Jurisdiction for this court to review said proceeding, limited to the precise procedural defects which allegedly prejudiced the plaintiffs' bid, is therefore proper. What remains to be determined now relates to the merits of plaintiffs' complaint, *i.e.,* whether any violation of procedure occurred, and then, whether that violation was indeed prejudicial and not harmless. As noted *supra,* these latter issues have been severed from the defendant's motion to dismiss, and are now the subject of its pending motion for summary judgment. As the court is currently awaiting the plaintiffs' response thereto, we reserve decision on that latter motion to a later date.

### B. *Defendant's Motion To Vacate Pending Injunction*

As noted *supra,* on August 13, 1986, the court entered a preliminary injunction enjoining the defendant from awarding the subject contract to anyone other than Sterlingwear for the stated period. That injunction was based on four findings duly supported by creditable evidence adduced by plaintiffs during the July 31—August 1, 1986 hearing. Specifically, the court found:

(1) Denial of relief will visit immediate and irreparable harm on the plaintiff Sterlingwear inasmuch as it will need to engage in extensive post-award activities to restore the status quo. This is particularly unwarranted in light of defendant's failure to demonstrate any injury to itself which will be occasioned by this injunction;

(2) Plaintiffs have no adequate remedy at law;

(3) Plaintiffs have demonstrated sufficient cause to question the rational[e] of the DLA in denying their award as low bidder; and we so find that such evidence as was adduced reflects a substantial likelihood of success on the merits. In particular, we are cognizant of the facts that the SBA decided overwhelmingly in plaintiffs' favor on the issue of their COC; that plaintiffs have demonstrated the successful completion of *over 100* previously held government contracts; no previous debarment action was ever instituted against Vi-Mil, and, in fact, was specifically found to be unwarranted in the case of each defaulted Vi-Mil contract; and that with the exception of the two 1984 annual reports (DXs 5 and 6), no credible evidence has been adduced to support defendant's conclusion of commonality between Vi-Mil and Sterlingwear over the relevant period; and

(4) The grant of a preliminary injunction is in the public interest. We believe that Congress, in granting this court equitable jurisdiction in bid protest cases, sought to protect the integrity of small businesses, such as the plaintiffs', as well as the interest of the taxpayers in having the full benefit of the low bidder's services on a competitively bid contract. Here, plaintiffs' bid was approximately $30,000 below that of the second lowest bidder.

*Sterlingwear,* 10 Cl.Ct. at 649. At the time the injunction was entered it appeared, at that posture, that the maximum time frame for resolving subject matter would be until a decision was rendered by DLA on the plaintiffs' then pending debarment.

 In its motion to vacate the court's preliminary injunction barring any award of the subject contract to any bidder but Sterlingwear, the government, through oral and written submission, sought to discredit the existence of each of the findings *supra* previously made by the court. Inasmuch as we believe that these arguments by defendant are not sufficient to overcome the strength of those findings listed *supra,* we summarily address the substance of the defendant's contentions.

Firstly, defendant avers that the balance of any injury occasioned by this proceeding has shifted towards the defendant, rendering a withdrawal of the injunction less detrimental to plaintiffs than its continuation would be to defendant. While defendant does not contest that plaintiffs still would have to engage in extensive post-award activities in an attempt to be made whole, it now believes that because the second lowest bidder (even though $30,000 higher than plaintiffs) is about to withdraw its bid, this circumstance *ipso facto* justifies the aforementioned significant burden on the plaintiffs. Moreover, argues defendant, if the second lowest bidder withdraws its bid, the burden and injury on defendant is measurably increased due to the fact that the contracting officer will now be forced to cancel the solicitation in issue and re-issue it, thereby further increasing the costs and delaying any chance for expeditiously filling orders on these already backlogged coats. While at first blush there appears to be some surface logic to the defendant's position, any merit therein is defeated when one considers that should Sterlingwear prevail here, the court may, under certain circumstances, enjoin the cancellation of the solicitation and permanently enjoin DLA from awarding the contract to anyone but the true *low* bidder—Sterlingwear. *See National Forge Co.,* 779 F.2d at 665; *International Graphics, Div. of Moore Business Forms, Inc. v. United States,* 4 Cl.Ct. 186 (1983). As for any resulting injury due to delay, this is indeed no more than one of the risks of litigation, which is shared *equally* by the plaintiffs as well. More importantly, said back orders have not been shown to imperil national defense nor has said circumstance been shown to visit irreparable harm on defendant, as would clearly be the case to plaintiffs were the contract to be awarded to Dale Fashions, prior to the resolution of this proceeding.

Secondly, defendant contests the court's continuing finding that plaintiffs have no adequate remedy at law. In that connection, defendant suggests that plaintiffs *now* have an adequate "remedy at law" by means of a challenge of the debarment proceeding in the U.S. District Court. This assertion is clearly erroneous. It is erroneous because any redeeming remedy sought by plaintiffs in the district court will undoubtedly parallel that sought here: a permanent injunction, including a declaration that the debarment proceeding was in error, and that, if necessary, the solicitation be reinstated. These requested remedies are inherently *equitable* remedies, not ones provided at law. That result remains consistent whether they are awarded pursuant to the equitable powers of the district court, or those derived here from § 1491(a)(3). Given this identity of remedy, it strains all notions of judicial economy, as well as fairness to all parties, to require plaintiffs to engage in *two* law suits to receive the complete equitable re-

lief this court itself has the statutory authority to award in *one*.

Thirdly, defendant challenges this court's finding that plaintiffs retain any likelihood of prevailing on the merits. This is because, according to defendant, plaintiffs have been properly debarred by the DLA. Debarment clearly substantiates the previous finding of nonresponsibility by the CO. Were the challenge by plaintiffs not to the propriety of DLA's procedural conduct in the debarment proceeding itself, we might be persuaded by this argument. However, it truly begs the question to vacate the injunction when that which defendant relies on to justify said action is the precise occurrence giving rise to the plaintiffs' contention: an activity which plaintiffs allege deprived them of the full and honest consideration of their bid. Given the present posture of this case, and defendant's now pending motion for summary judgment, plaintiffs' likelihood for success on the merits is no less than when this proceeding was commenced.

Fourthly, and last, we address defendant's contention that to vacate the injunction would be more in the public interest than to maintain it. It is true, as defendant points out, that it is squarely in the public interest not to award contracts to debarred contractors, and to avoid the cost of having to award contracts to *higher* bidders. Surely, however, defendant cannot be simultaneously contending that to preserve the integrity of the administrative process, as plaintiffs seek, is also not of equal consequence to the public interest. The injury defendant seeks to avoid can, for the most part, be remedied by waiting to re-solicit pending a decision of this court on the merits. However, the administrative process in this case will *only* maintain its semblance of integrity if, in the end, plaintiffs remain in a posture to receive that to which they are truly and fairly entitled: a fair debarment or an award of the contract. This latter result requires that the court maintain the existing injunction.

III. *Conclusion*

On the basis of the foregoing, we hereby affirm those bench rulings issued on December 31, 1986, in which the court denied defendant's motion to dismiss relative to jurisdiction, denied defendant's motion to vacate the existing preliminary injunction, and granted defendant's motion for expedited consideration. As noted *supra*, defendant's motion to dismiss on the merits will now be treated as one for summary judgment pursuant to the procedures contained in RUSCC 56.

IT IS SO ORDERED.