**MEDICAL DEVICES OF FALL RIVER, INC., a Massachusetts Corporation**

v.

**The UNITED STATES.**

No. 183–89C.

United States Claims Court.

Dec. 15, 1989.

Anthony K. Modafferi, III, Hackensack, N.J., Atty. of Record, for plaintiff. Pressler & Modafferi, of counsel.

Evelyn M. Korschgen, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

MEROW, Judge.

This pre-award contract claim comes before the court on defendant's motion for summary judgment and plaintiff's opposition.

## BACKGROUND

The controversy which has produced this litigation had its genesis in a solicitation (DLA 120–88–R–0496) issued in March 1988 by the Defense Logistics Agency (DLA), Defense Personnel Support Center, Philadelphia, Pennsylvania (DPSC) for offers (negotiated) for a requirements contract to supply orders for the stethoscopes needed by listed government activities during the one-year period after the date of award.

On April 19, 1988 plaintiff submitted its proposal on Solicitation DLA 120–88–R–0496. Under the "Manufacturing Facilities" section of this submission, plaintiff listed "SICOA Ridgewood N.J. 07657" for the stethoscopes offered. Under the "Place of Performance" section of its submission, for "100%" of the items offered, plaintiff listed:

SICOA
1185 Edgewater Avenue
Ridgefield, NJ 07657
Bergen County

Following a conviction on fraud and false statement counts in the United States District Court for the District of New Jersey,

the Surgical Instrument Company of America (SICOA) was debarred by DLA effective December 28, 1987 through March 26, 1991, such that it is ineligible to contract with the government.

By telephone call and a subsequent letter dated July 18, 1988 to plaintiff, DPSC took the position that "Surgical Instrument Company of America has been debarred by the Defense Logistics Agency and is, therefore, not eligible to be a subcontractor for this procurement." On August 17, 1988 plaintiff transmitted a protest to the General Accounting Office (B–232336) (GAO). By letter of August 29, 1988 to plaintiff, DLA rescinded the letter of July 18, 1988 and stated the position that plaintiff "is fully eligible to be considered for award." DLA's contracting officer did advise, however, that "if you do intend to use SICOA as a supplier, that fact will have a bearing on my determination of your responsibility to perform the contract." On September 14, 1988, GAO dismissed protest B–232336 as "academic," as Medical Devices (MDI) "has received the relief it requested * * *." GAO noted that, as plaintiff is a small business, if it is found to be nonresponsible, "that determination would then be forwarded to the Small Business Administration (SBA) for possible issuance of a certificate of competency (COC)." Because of SBA's role and the conclusive nature of the COC determination on the procuring agency, GAO declined to retain the matter for consideration as to any future small business nonresponsive aspect.

On September 2, 1988, DLA issued a negotiated solicitation (DLA 120–88–R–1418) for offers to supply a set quantity of stethoscopes. Plaintiff submitted its offer on October 7, 1988, listing SICOA as its source for "100%" of the items offered. Upon receipt of a DPSC letter dated January 11, 1989 stating that SICOA was "unacceptable as a source," counsel for plaintiff transmitted a protest letter to the contracting officer referencing the prior positions taken on still-pending Solicitation 120–88–R–0496 for a one-year require-

ments contract and the GAO action in reliance thereon. DPSC responded by cancelling Solicitation DLA 120–88–R–1418 stating that the stethoscopes will be included as part of the requirements covered by the still-pending Solicitation DLA 120–88–R–0496, on which an amendment "0001" was issued to all offerors extending the closing date to April 5, 1989 and adding "Clause 52.209–1005 Certification or Disclosure of Debarred or Suspended Subcontractors." The cited new clause provided, in part, "(a) contractors are prohibited from using suspended or debarred contractors as subcontractors."

The instant suit was filed on April 4, 1989, by which plaintiff seeks to obtain an award on Solicitation DLA 120–88–R–0496, together with fees and expenses, or a judgment for bid proposal costs.

Following a request for briefing on the validity of the amendment 0001 changes to DLA 120–88–R–0496, defendant, by amendment No. 0002 effective April 20, 1989, issued to all offerors, deleted "Clause 52.-209–1005" from this solicitation, changed the closing date to May 11, 1989, and substituted the following clauses:

FAR 52.209–5 Certification Regarding Debarment, Suspension, Proposed Debarment, And Other Responsibility Matters (APR 1989)

FAR 52.209–6 Protecting The Government's Interest When Subcontracting With Contractors Suspended, Debarred Or Proposed For Debarment (APR 1989).

These clauses (FAR 52.209–5 and FAR 52.209–6) resulted from a recently concluded FAR case, No. 87–24, concerning a proposed rule published in the Federal Register on July 31, 1987 (52 Fed.Reg. 28,642 (1987)) to revise the suspension and debarment procedures. While the new clauses had not been published in the Federal Register, defendant asserts that by use of the deviation procedure, they may be incorporated in the subject solicitation.[1]

---

1. Clause 52.209–6 provides as follows:
   "52.209–6 PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACT-

ING WITH CONTRACTORS SUSPENDED, DEBARRED OR PROPOSED FOR DEBARMENT (APR 1989)

Following extensive oral argument, an order was issued in this matter on April 25, 1989 suspending proceedings to await an award decision, at which point the nature of the further proceedings required to present and resolve the issues would be considered.[2]

In May of 1989 the contracting officer, on Solicitation DLA 120–88–R–0496, initiated the procedures required to obtain a pre-award survey of plaintiff and of its supplier, SICOA, by the Defense Contract Administration Services Management Area (DCASMA). As the procurement was for medical devices, the contracting officer also requested that the Food and Drug Administration (FDA) provide a quality assurance survey of plaintiff and SICOA. Plaintiff was requested to provide pre-award samples of the stethoscopes.

On June 5, 1989 an on-site pre-award survey was conducted at Medical Devices, Inc., Fall River, Massachusetts, by an Industrial Specialist for DCASMA–Boston. The resulting report, dated June 20, 1989,

concluded that "[b]ased on the satisfactory review of all factors investigated, a 'Complete Award' is recommended." DCASMA–Springfield performed the pre-award survey at SICOA. The report on SICOA found that firm to be unsatisfactory, both because it was debarred and not considered to be a reasonable and reliable source from which to receive a quality product, and because the firm had not adequately supported its ability to produce and deliver on orders beyond the 7,000 stethoscopes on hand. DCASMA–Springfield recommended no award. The "no award" recommendation was adopted as the final DCASMA–Boston position submitted to DPSC.

The FDA conducted an inspection at SICOA on June 12, 1989 and based upon statements from the manager on the site and his own observations, the FDA investigator concluded that SICOA had not been in operation for over a year such that it was not possible to conduct a meaningful evaluation of the firm's compliance with

(a) The Government suspends or debars contractors to protect the Government's interest. Contractors shall not enter into any subcontract equal to or in excess of $25,000 with a contractor that has been debarred, suspended, or proposed for debarment unless there is a compelling reason to do so. If a contractor intends to subcontract with a party that is suspended, debarred, or proposed for debarment (see 9.404 for information on the list of Parties Excluded from Procurement Programs), a corporate officer or designee of the Contractor is required by operation of the clause at 52.209–6, Protecting the Government's Interest when Subcontracting with Contractors Suspended, Debarred or Proposed for Debarment, to notify the contracting officer, in writing, before entering into such subcontract. The notice must include the following:

(1) The name of the subcontractor;

(2) The Contractor's knowledge of the reasons for subcontractor being on the list;

(3) The compelling reason(s) for doing business with the subcontractor notwithstanding its inclusion on the List of Parties Excluded for Procurement Programs; and

(4) The systems and procedures the contractor has established to ensure that it is fully protecting the Government's interests when dealing with such subcontractor in view of the specific basis for the party's debarment, suspension, or proposed debarment.

(b) The contractor's compliance with the requirements of 52.209–6 will be reviewed during

Contractor Purchasing System Reviews (see 44.-3)."

2. The suspension order of April 25, 1989 incorporated a requirement that, "[i]f any award on the procurement at issue is to be made while this litigation is still pending, defendant shall then provide actual notice to opposing counsel at least 48 hours in advance of any such award; * * *." While this litigation has been pending DPSC has made several emergency purchases of stethoscopes without providing prior notice. Plaintiff claims this to be a violation of the order of April 25, 1989. The instant litigation involves Solicitation DLA 120–88–R–0496 for a contract to supply the stethoscopes required in the one-year period after the date of award. Current emergency procurements are not being made during the requirement period covered by this solicitation. If the orders obtained during the ensuing requirement period on Solicitation DLA 120–88–R–0496 should be significantly less than estimated, this would constitute a post-award matter of significance only to the contractor obtaining the award. Moreover, as plaintiff was not in a position to submit an offer on these emergency procurements, the Claims Court would lack jurisdiction to entertain a pre-award contract claim proceeding with respect to them. *A & C Bldg. and Indus. Maintenance v. United States,* 11 Cl.Ct. 385 (1986). Accordingly, no issue of relevance to the present proceeding has been raised with respect to defendant's emergency purchases of stethoscopes.

FDA regulations. The FDA reported this to the contracting officer.

On June 27, 1989, Amendment No. 0003 to Solicitation DLA 120–88–R–0496 was issued to all offerors extending the closing date and adding three clauses dealing with recently enacted procurement integrity legislation. Amendment No. 0004 was issued to all offerors on July 12, 1989, further extending the closing date.

On July 25, 1989, the contracting officer issued his Findings and Determinations that "Medical Devices of Fall River, Inc., is non-responsible and is, therefore, unacceptable for an award of items Nos. 0001 and 0002 under Solicitation # DLA 120–88–R–0496." The concluding findings (Nos. 27 and 28) and Determination read as follows:

27. As shown in the above, SICOA:

a. cannot comply with the required delivery schedule set forth in the solicitation based on a lack of capacity,

b. it is a debarred firm and, therefore, has an unsatisfactory record of integrity and business ethics,

c. cannot be determined responsible by the contracting officer based on FDA's survey report on the firm.

28. As shown in the above, MDI:

a. lacks adequate controls and procedures to insure contract performance,

b. cannot comply with the required delivery schedule set forth in the solicitation based on DCASMA Springfield's unsatisfactory rating of its subcontractor's production capability,

c. cannot be determined responsible by the contracting officer based on the FDA's survey report on its subcontractor,

d. has not demonstrated its ability to protect the Government's interest particularly in light of the fact that it is proposing a debarred firm as its subcontractor,

e. by its insistence on the use of a debarred firm—SICOA—as its subcontractor demonstrates an unsatisfactory record of integrity and business ethics on its own part.

## DETERMINATION

Based on the above findings, it is the determination of the contracting officer that Medical Devices of Fall River, Inc. and its subcontractor—Surgical Instrument Company of America—lack the competency, capability, capacity and integrity to perform and are, therefore, considered non-responsible and unacceptable for award of items # 0001 and # 0002 under solicitation # DLA120–88–R–0496.

The contracting officer forwarded his Findings and Determination of non-responsibility to the Small Business Administration. On August 23, 1989 a field visit was conducted at Medical Devices of Fall River by Industrial Specialist William F. Littlefield. His 15 page report concluded with the following summary and recommendation:

1) Facilities and equipment are adequate.

2) Materials and subcontracts are suspect.

3) Costs are not verified.

4) Technical capability is suspect.

5) Quality control is not verified.

6) Production input requested regarding SICOA was not received and therefore production is not satisfactory.

7) Performance is unacceptable.

8) There is no recommendation from the Industrial Specialist regarding the Integrity issue.

## RECOMMENDATION

The Industrial Specialist's recommendation is for *No Award.*

By its letters dated August 31, 1989 the SBA denied a Certificate of Competency (COC) to plaintiff on Solicitation No. DLA 120–88–R–0496 and so notified DPSC that "you are free to award to the next lowest bidder."

On October 27, 1989, after undertaking discovery, plaintiff filed an amended complaint and the instant summary judgment proceedings ensued.

## DISCUSSION

Plaintiff opposes summary judgment both on legal grounds and by asserting that there are material factual issues in dispute which require evidentiary proceedings. The claimed material factual issues involve plaintiff's assertion of bias and predisposition on the part of the contracting officer to deny an award to plaintiff. In support, plaintiff has filed substantial portions of the contracting officer's deposition taken as discovery in this matter. Plaintiff has also filed a copy of a supplemental memorandum in support of a motion for reduction of sentence which counsel in the criminal proceeding involving SICOA has filed in the United States District Court for the District of New Jersey. In this motion, portions of the contracting officer's discovery deposition testimony in the instant matter are asserted to cast doubt on the credibility of his testimony in the criminal proceeding which resulted in SICOA's fraud and false statement conviction. Plaintiff claims this raises a credibility problem concerning the contracting officer's actions with respect to plaintiff on the instant solicitation for a one-year requirements contract such that summary judgment proceedings are not appropriate.

Upon analysis of the submissions filed, it is concluded that plaintiff has not established the existence of a material factual dispute such as to preclude disposition of this matter on Rule 56 proceedings. Rather, the issues presented are essentially legal ones which may be resolved on the briefs and exhibits submitted.

The fact of SICOA's District Court conviction for fraud and false statement and the resulting debarment from federal contracting effective December 28, 1987 through March 26, 1991, are undisputed and not subject to relitigation in this matter. *See Horton J. Brown v. United States*, 207 Ct.Cl. 768, 524 F.2d 693 (1975).

As SICOA was debarred prior to the date the solicitation was issued for the one-year requirements contract (DLA 120–88–R–0496), had SICOA attempted to contract directly with DPSC for this stethoscope procurement, no jurisdiction would exist in the Claims Court to consider any pre-award contract claim on the matter. This is because no contract for fair and honest consideration of an offer can be formed with a contractor who is debarred from entering into any contract with the United States. *See* 28 U.S.C. § 1491(a)(3); *United States v. Grimberg Co.*, 702 F.2d 1362 (Fed.Cir. 1983); *Electro–Methods, Inc. v. United States*, 728 F.2d 1471 (Fed.Cir.1984); *ATL, Inc. v. United States*, 735 F.2d 1343 (Fed. Cir.1984); *ATL, Inc. v. United States*, 736 F.2d 677 (Fed.Cir.1984).

However, SICOA has not submitted a direct offer to supply the stethoscopes needed for one year from date of award to DPSC. Rather, the offer was submitted by Medical Devices of Fall River, Inc., with SICOA to be its subcontractor for 100 percent of the stethoscopes involved. Thus, with the submission of plaintiff's offer on Solicitation DLA 120–88–R–0496, there exists an implied contract to have the offer fairly and honestly considered such that jurisdiction exists to consider the present pre-award claim under 28 U.S.C. § 1491. *United States v. Grimberg Co., supra.*

Contracts may be awarded only to a "responsible source." 10 U.S.C. § 2305(b); 48 C.F.R. § 9.103. A responsible source is a contractor who:

(A) has adequate financial resources to perform the contract or the ability to obtain such resources;

(B) is able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and Government business commitments;

(C) has a satisfactory performance record;

(D) has a satisfactory record of integrity and business ethics;

(E) has the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain such organization, experience, controls, and skills;

(F) has the necessary production, construction, and technical equipment and facilities, or the ability to obtain such equipment and facilities; and

(G) is otherwise qualified and eligible to receive an award under applicable laws and regulations; * * *.

10 U.S.C. § 2302(3); 41 U.S.C. § 403; 48 C.F.R. § 9.104–1.

Under the applicable regulations, plaintiff was not expressly precluded from using a debarred contractor as a 100 percent source for the stethoscopes. The regulations (48 C.F.R. § 9.104–4) provided as follows:

Subcontractor responsibility.

(a) Generally, prospective prime contractors are responsible for determining the responsibility of their prospective subcontractors (but see 9.405 and 9.405–2 regarding debarred, ineligible, or suspended firms). Determinations of prospective subcontractor responsibility may affect the Government's determination of the prospective prime contractor's responsibility. A prospective contractor may be required to provide written evidence of a proposed subcontractor's responsibility.

(b) When it is in the Government's interest to do so, the contracting officer may directly determine a prospective subcontractor's responsibility (e.g., when the prospective contract involves medical supplies, urgent requirements, or substantial subcontracting). In this case, the same standards used to determine a prime contractor's responsibility shall be used by the Government to determine subcontractor responsibility.

Accordingly, under the regulations, the use of a debarred contractor by plaintiff for the stethoscopes may affect the government's determination of plaintiff's responsibility and the contracting officer may directly determine subcontractor responsibility, given the medical supply nature of the procurement.[3] Clearly, the regulations do not encourage the use of debarred contractors as subcontractors.

Here, the contracting officer reached an adverse determination as to SICOA's responsibility and largely, but not wholly, on this basis determined that plaintiff was non-responsible and unacceptable for award of the items under Solicitation DLA 120–88–R–0496 on which it was the lowest offeror using SICOA as a 100 percent source.

Plaintiff attacks the contracting officer's determination of responsibility as an abuse of discretion and attempts to raise a credibility issue in this regard by citations to the contracting officer's discovery deposition.

With respect to the credibility issue, it is well settled that a party may not defeat a properly supported motion for summary judgment by raising generalized questions as to the credibility of the movant's affiants. *Robinson v. Cheney*, 876 F.2d 152, 162 (D.C.Cir.1989). Testimony by the contracting officer recognizing that the applicable regulations did not expressly preclude use of a debarred contractor as a subcontractor in no logical way undercuts his determination in this matter that SICOA lacked responsibility and plaintiff's use of SICOA for 100 percent of the procurement adversely impacted on plaintiff's responsibility. 48 C.F.R. § 9.104–4 provides express warning to a contractor that subcontractor responsibility may affect the prime contractor's responsibility and provides for a separate determination of subcontractor responsibility by the contracting officer when medical supplies are involved. The contracting officer's personal views as to whether SICOA should have been convicted or debarred are irrelevant to his determination with respect to responsibility on Solicitation DLA 120–88–R–0496.

■ Overturning the contracting officer's determination requires a showing that it is arbitrary, capricious or constitutes an abuse of discretion. *Prineville Sawmill Co. v. United States*, 859 F.2d 905 (Fed.Cir. 1988). Where the procurement decision has a reasonable or rational basis, it is not

**3.** 48 C.F.R. § 9.405–2, Restrictions on Subcontracting, provides: "When a debarred or suspended contractor is proposed as a subcontractor for any subcontract subject to Government consent, approval shall not be given unless the acquiring agency's head or a designee states in writing the compelling reasons for this approval." Solicitation DLA 120–88–R–0496 did not contain a provision requiring government consent for a subcontract.

contemplated that the Claims Court will intervene in the matter. *CACI, Inc. v. United States,* 719 F.2d 1567, 1581 (Fed. Cir.1983); *Venice Maid Co. v. United States,* 225 Ct.Cl. 418, 431, 639 F.2d 690, 698 (1980).

■ In the instant case, the contracting officer's determination has a rational and reasonable basis. The contracting officer has a statutory duty of dealing only with responsible contractors and he must make the decision as to responsibility on the evidence available. *Robinson v. Cheney,* 876 F.2d 152, 162 (D.C.Cir.1989). The evidence available to the contracting officer in the form of the pre-award surveys and the prior conviction and existing debarment of SICOA amply support the decision reached. Plaintiff points to those portions of the pre-award surveys favorable to it as indicating an abuse of discretion by the contracting officer, but the negative aspects of these reports far outweigh the positive.[4]

It can hardly be unreasonable for the contracting officer to determine not to deal with a company using a debarred contractor to supply all of the procurement items where this contractor cannot support an ability to deliver the items in the quantities estimated to be required.

While the applicable regulations did not expressly preclude the use of a debarred contractor as a subcontractor for 100 percent of the procurement requirements, legislation or regulations do not always specify the full panoply of remedies available to effectuate the purposes of the act or regulation. For example, in *United States v. Acme Process Equipment Co.,* 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966), the Supreme Court upheld cancellation of a contract for improper subcontract activity, overruling the Court of Claims' reasoning "that had Congress wanted 'to provide the additional remedy of contract annulment, it could have done so' by express language, 171 Ct.Cl. [324] at 343, 347 F.2d [509] at 521, * * *." 385 U.S. at 142, 87 S.Ct. at

354. *See also Mil–Tech Systems, Inc. v. United States,* 6 Cl.Ct. 26 (1984) (upholding a finding of ineligibility based upon procurement policy). The contracting officer's determination in the instant matter is fully in accord with the policy implicit in the regulations which precludes the direct use of debarred contractors by the government and clearly does not encourage their use as subcontractors.

Plaintiff also claims that the decision of the SBA not to issue a Certificate of Competency lacks validity. A violation of 48 C.F.R. § 19.601(b) is claimed, presumably because in its letter of August 31, 1989 to plaintiff the SBA stated, in part:

> 2) Medical Devices has not complied with the Federal Acquisition Regulations governing the use of debarred subcontractors. The use of SICOA effects [sic] Medical Devices own responsibility and eligibility for award and therefore there is no sufficient reason to put aside the integrity findings of the contracting officer.

Plaintiff cites a discovery deposition response by the contracting officer that this statement by SBA, as to plaintiff's compliance with Federal Acquisition Regulations, was, in his opinion, not correct.

In context, however, the SBA statement is correct. 48 C.F.R. § 9.104–4 clearly places the requirement on the prime contractor to demonstrate subcontractor responsibility and warns that the subcontractor responsibility determination may affect that of the prime. Use of a debarred contractor as a full source subcontractor placed a substantial obligation on plaintiff to demonstrate the responsibility of both SICOA and itself, and compliance with this requirement did not occur. No relevant violation of applicable regulations in regard to the SBA's action was been shown. *See Cavalier Clothes, Inc. v. United States,* 810 F.2d 1108 (Fed.Cir.1987).

Finally, plaintiff claims violations of regulations or a failure to fairly and honestly

---

4. Plaintiff, by affidavit, contests the conclusion reported by the FDA investigator that SICOA was not operational. Contrary information was contained in the SICOA Survey Report by DCAS-MA–Springfield. The contracting officer must make the determination on the evidence available which, on this point, was conflicting. Reliance on the FDA report was not unreasonable.

consider its offer with regard to the actions of DPSC in amending Solicitation DLA 120–88–R–0496 to add and delete contract clauses concerning use of debarred contractors as subcontractors. Defendant argues that no violation of regulations or improper failure to consider plaintiff's offer occurred. However, in order to establish such a valid pre-award contract claim, plaintiff must set forth a clear and prejudicial violation of a procurement statute or regulation. *CACI Field Services, Inc. v. United States*, 854 F.2d 464, 466 (Fed.Cir. 1988). This, plaintiff has not done. The clauses have not prejudiced plaintiff. The procurement process continued to a responsibility determination. *See Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1058 (1st Cir.1987). The decision not to award the requirements contract at issue to plaintiff was based upon the responsibility determination required by statute and regulations. The various contract clauses added or removed by DPSC are not relevant to this responsibility determination and a decision as to their validity or invalidity is not required.

## CONCLUSION

The undisputed facts show that plaintiff's offer on Solicitation DLA 120–88–R–0496 was fully and fairly considered by DPSC through a determination of responsibility as required by statute and regulation, and that the resulting responsibility determination is reasonable, has a rational basis, and is not arbitrary or capricious. In this circumstance, plaintiff's claims for equitable or monetary relief cannot survive defendant's well supported motion for summary judgment and it is ORDERED:

(1) Defendant's motion for summary judgment is allowed;

(2) Plaintiff's motion for equitable relief is denied and final judgment shall be entered dismissing plaintiff's complaint, as amended, with no costs to be assessed.