**THOMAS CREEK LUMBER AND LOG COMPANY, an Oregon corporation,**

v.

**The UNITED STATES.**

**No. 90–4037C.**

United States Claims Court.

Feb. 15, 1991.

---

**15.** A.R. No. 9 at 1.

Barry W. Dod, Portland, Or., for plaintiff. Joseph A. Yazbeck, Jr. and Allen, Kilmer, Schrader, Yazbeck & Chenoweth, P.C., of counsel.

Thomas P. McLish, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for U.S. James Kauble, Dept. of Agriculture, of counsel.

## OPINION

MEROW, Judge.

This preaward contract claim matter comes before the court upon a dispositive motion filed by defendant and after a hearing on the merits. At issue is plaintiff's request for equitable relief from a decision by the contracting officer that, as a result of a failure to supply requested financial information, plaintiff lacked the responsibility required to be awarded a timber sale contract on which it was the high bidder.

### Facts

In August 1990, Region 6 of the United States Forest Service, a part of the Department of Agriculture, advertised for bids for a timber sale contract, listed as the "Sheep SSF Sale," for an area located in the Mt. Hood National Forest, Oregon. Of the three contracting officers having responsibility for contracts in the Region, Sandra E. Marquis, who was also a Resource Specialist, assumed responsibility for the Sheep SSF sale award after the assigned contracting officer, Richard C. Blashill, became unavailable. The senior contracting officer, Thomas L. Ortman, also retained supervisory authority with respect to this matter.

On October 2, 1990 the bids on the Sheep SSF Sale were publicly opened and, at the ensuing oral auction, Thomas Creek Lumber and Log Company bid the highest price. The total value of Thomas Creek's bid was $858,670.

During 1990 the Forest Service became concerned about the condition of the timber industry and contracting officers were notified to maintain a careful watch with respect to timber purchasers to ascertain if they were financially overextended. The Forest Service wanted to avoid any repeat of a situation which had occurred several years previously where financial problems related to timber contracts had required legislative relief for the timber industry. In addition, during the first half of 1990 timber sales had been substantially restricted in the Mt. Hood area because of procedures designed to protect the Northern Spotted Owl. As a result of this restriction, timber inventories at the mills

were depleted, with resulting price impact, and timber sales, when finally authorized, were concentrated in the final quarter of the fiscal year.

After bid opening on October 2, 1990, by letter dated October 11, 1990 plaintiff was notified that it was the apparent high bidder on the Sheep SSF timber sale. In addition, the contracting officer's letter notified plaintiff that "I will not make a decision about awarding the sale until I have determined your financial ability to perform the contract."

As the contracting officer then assuming responsibility for the Sheep SSF timber sale, Sandra E. Marquis proceeded with the steps she considered appropriate to reach the responsibility determination required for an award of the contract. The applicable regulation, 36 C.F.R. § 223.101, provides (in part):

(a) A Contracting Officer shall not award a timber sale contract unless that officer makes an affirmative determination of purchaser responsibility. In the absence of information clearly indicating that the prospective purchaser is responsible, the Contracting Officer shall conclude that the prospective purchaser does not qualify as a responsible purchaser.

(b) To determine a purchaser to be responsible, a Contracting Officer must find that:

(1) The purchaser has adequate financial resources to perform the contract or the ability to obtain them;

\* \* \* \* \* \*

(c) If the prospective purchaser is a small business concern and the Contracting Office determines that the purchaser does not qualify as a responsible purchaser on an otherwise acceptable bid, the Contracting Officer shall refer the matter to the Small Business Administration which will decide whether or not to issue a Certificate of Competency.

The contracting officer reviewed the history of Thomas Creek's timber purchases, by fiscal year, from the inception of the company after 1983 through 1990. Thomas Creek's timber contracts were charted to determine the volume of timber remaining to be harvested at the end of each fiscal year and, using a weighted average for timber value, a dollar value on the timber remaining was obtained. The information developed showed the following total volume and dollar value of remaining timber under contracts at the end of each fiscal year as follows:

| Fiscal Year | Volume Remaining | Value Remaining |
|---|---|---|
| 84 | 7,900.75 mbf | $ 864,605.03 |
| 85 | 8,150.97 mbf | 1,027,879.83 |
| 86 | 5,814.99 mbf | 876,533.61 |
| 87 | 4,184.77 mbf | 672,560.08 |
| 88 | 3,521.30 mbf | 599,293.17 |
| 89 | 1,254.86 mbf | 209,173.29 |
| 90 | 15,250.32 mbf | 5,981,588.13 |

The contracting officer also reviewed quarterly profitability reports compiled by the Timber Data Company. These reports, which are utilized throughout the timber industry, indicated to the contracting officer that the profitability of Thomas Creek's remaining timber contract volume was questionable. The contracting officer was aware that Thomas Creek had a good performance record on its prior timber con-

tracts. Plaintiff had no defaults, had made its payments on time, and its bonding was in excess of requirements. However, given the substantial increase in timber remaining under contract with a resulting increase in sums which must be committed to down payments required by the contracts, the contracting officer considered that she had insufficient information on hand to make an affirmative determination of

Thomas Creek's responsibility as required for an award of the Sheep SSF contract.

The Forest Service maintains a Handbook setting forth policy to guide contracting officers. With respect to timber sales, the Forest Service Handbook provides guidance on financial analysis techniques. The policy set forth in the Handbook provides that financial ability be evaluated for first time high bidders, bidders who have filed for bankruptcy, or bidders involved in unresolved defaults. The policy provided that a bidder not be subjected to a financial ability analysis more than once in a 12–month period, "unless a substantial change has occurred in the bidder's financial position, bidding patterns have changed, or previous information submitted is proven to be erroneous." Among factors set forth as indicating a possible need for a financial ability analysis, the Handbook listed the following:

1. History of Late Timber Sale Contract Payments.

2. Impacts of Portfolio. Bidder holds a portfolio of timber sales (including the sale presently under consideration for award) bid so high as to indicate probable losses on harvest, or has a portfolio of timber sales with skewed bids.

3. Difficulty Obtaining Bonding.

4. Increase in Total Volume. When a bid would create a substantial increase in purchaser's total volume under contract compared with purchaser's historical level.

5. Reorganization or Divestiture of Assets. In the timber industry, it is a frequent practice to establish affiliate corporations which are under common control. While this is a very legitimate practice, it has significantly increased the extent of risk that bidding corporations will not retain sufficient resources to cover debts resulting from defaulted contracts. A situation of high priced portfolios in combination with the known existence of separate but affiliated corporations should be viewed as an extremely high risk. This is especially true if the parent affiliate has not guaranteed the operations of the subsidiary.

6. Problems Paying Employees or Subcontractors.

7. Requests for Collection Assistance from other Creditors.

8. Sudden Change in Historical Purchase Patterns. For example, the purchase of a large complicated sale versus a simple sale.

9. Sudden Rash of Minor of Near Frivolous Contract Disputes Act (CDA) Claims.

After considering the information available, the contracting officer determined that a review of Thomas Creek's financial ability was needed prior to award of further timber sale contracts, such as the Sheep SSF sale. The primary reason for this conclusion was the substantial increase in Thomas Creek's total volume at the end of fiscal year 1990, coupled with the fact that little was known about Thomas Creek's finances. The company had not had a financial ability review by the Forest Service since the company was formed by Mr. and Mrs. Brent C. Walker in 1983.

By letter dated October 26, 1990, the contracting officer requested financial information as follows (in part):

I have determined that a review of your financial ability is needed prior to award of further timber sale contracts. In general, this process will require that you provide, within 30 days, information showing that you have, or have access to, sufficient cash, working capital, and net worth for meeting expected financial obligations. Please provide the following information as applicable to your company.

\* \* \* \* \* \*

4. Complete a separate Form FS–6500–24, Financial Statement (except for Parts A, B and C) for you and each of your affiliates. In lieu of complete Parts A, B and C, attach a set of Financial Statements for the 3 most recent fiscal yearends (balance sheet, income statement, statement of cash flows, and accompanying footnotes). For the most recent fiscal year these statements and accompanying footnotes should be prepared in accordance with generally ac-

cepted accounting principles and must be accompanied by a report of either review or audit prepared by an independent Certified Public Accountant.

5. Submit log volumes harvested and/or lumber volume manufactured for each year represented in item 4.

\* \* \* \* \* \*

7. List anticipated gain (losses) on current timber sale contracts by year (including the sale at issue and sales of all affiliates).

\* \* \* \* \* \*

8. Complete items 1 through 5 of the enclosed Request for Verification, Form FS–6500–25, and forward to financial and other institutions where you have assets such as cash and securities on deposit in order that they can confirm directly to us the amounts indicated on your financial statements. A copy of this form is enclosed for your information and possible use.

Financial and other information provided in connection with this determination must be full, accurate, and complete to the best of your knowledge. The penalty for making false statements is prescribed in 18 U.S.C. § 1001. Information you provide is confidential, however, all public requests for information are handled pursuant to the Freedom of Information Act (5 U.S.C. § 552, as amended).

If you have any questions concerning information to be provided for the financial ability analysis, please call Scott Davenport, Accountant (503) 666–0652.

As I explained in my letter to Mr. Yazbeck, if you do not submit the requested financial information, I will be unable to make an affirmative determination of your financial ability as required by CFR 223.101(a). Therefore, I would not be able to award the Sheep SSF Timber Sale Contract. This matter would then be referred to the Small Business Administration (SBA) for a Certificate of Competency. If SBA doesn't issue a Certificate of Competency, your bid on the Sheep SSF Timber Sale will be rejected, and your bid guarantee will be returned. Sincerely,

Sandra E. Marquis
Thomas L. Ortman
Contracting Officer

By letter of October 24, 1990 to plaintiff's counsel, Mr. Joseph A. Yazbeck, Jr., the contracting officer further explained the basis for her conclusion that a financial ability review was required, as follows:

Dear Mr. Yazbeck:

I received your letter of October 15, 1990. CFR 223.101 states under (b)(1) that the Contracting Officer must find that the purchaser has adequate financial resources to perform the contract or the ability to obtain them. I have determined it necessary to review Thomas Creek's financial ability due to the increased volume and value under contract on the Mt. Hood National Forest.

In December, 1989, Thomas Creek was awarded the Loss SSF Timber Sale. Within the last three months we have awarded the Lava, Westrun, and Rebuck SSF Timber Sales. On October 2, 1990, Thomas Creek was determined the apparent high bidder on the Sheep SSF Timber Sale. These sales combined have a total sale value (stumpage only) of approximately $7,000,000.00.

Thomas Creek began purchasing sales on the Mt. Hood in 1984. I reviewed the value remaining as of the end of each fiscal year from 1984 through 1989. This information was considered to establish Thomas Creek's historical level on the Mt. Hood. This level is approximately $700,000.00.

As you can see, Thomas Creek has had a substantial increase in its timber sale portfolio on the Mt. Hood. It is my responsibility to ensure that the Government's interests are protected.

You stated that Thomas Creek has decided not to make any information regarding its finances available. If Thomas Creek doesn't submit the requested financial information, I will be unable to make an affirmative determination of their financial ability as required by CFR 223.101(a). Therefore, I would not be able to award the Sheep SSF Timber Sale

Contract. This matter would then be referred to the Small Business Administration (SBA) for a Certificate of Competency. If SBA doesn't issue a Certificate of Competency, Thomas Creek's bid on the Sheep SSF Timber Sale will be rejected, and their bid guarantee will be returned.

As of this same date, I have written to Thomas Creek requesting specific information needed to complete the review. The financial review will consider all volume under contract between Thomas Creek Lumber & Log and the Forest Service. A copy of that letter is enclosed for your information.

To date, in calendar year 1990, approximately 25 financial ability reviews were completed in Region 6 upon the request of a Contracting Officer. Full information regarding policy and criteria for the review is contained in the enclosed Chapter 20 of FSH 6509.18—Financial Analysis Handbook. This handbook was effective March 12, 1990.

If you have any further questions, please contract Sandy Marquis at (503) 666–0782, or myself.

Sincerely,

Sandra E. Marquis

Thomas L. Ortman

Contracting Officer

As is noted in the above-quoted letter to Mr. Yazbeck, plaintiff informed the Forest Service that it declined to furnish the financial information requested. Mr. Walker explained this decision in his hearing testimony as based upon the inability of the Forest Service to absolutely guarantee that the financial information would not be obtained, in some manner, by his competitors in the timber industry. As Thomas Creek was a small family-owned business, Mr. Walker considered that his financial status must remain absolutely confidential in that the information requested by the Forest Service would enable one to determine how much Thomas Creek could afford to bid on timber sale contracts and how much timber Thomas Creek would be capable of maintaining under contracts at any one time. Mr. Walker testified that he was informed by the senior contracting officer, Mr. Ortman, in effect, that while the Forest Service would do its best to keep the information confidential, no firm guarantee was possible.

Having received no financial information in response to her October 26, 1990 request by letter dated December 3, 1990 (with a copy to plaintiff), the issue was sent to the Small Business Administration as follows:

Small Business Administration

Attn: Ms. Lola Davidson

2615 Fourth Avenue, Room 440

Seattle, WA 98121

Dear Ms. Davidson:

Thomas Creek Lumber & Log Company was determined the apparent high bidder on the Sheep SSF Timber Sale on October 2, 1990. CFR 223.101 states under (b)(1) that the Contracting Officer must find that the purchaser has adequate financial resources to perform the contract or the ability to obtain them. I determined it necessary to review Thomas Creek's financial ability due to the increased volume and value under contract on the Mt. Hood National Forest.

On October 26, 1990, I requested specific financial information from Thomas Creek Lumber & Log Co. They were given 30 days in which to respond. To date, I have not received this information. Due to the lack of response from Thomas Creek, I am unable to make an affirmative determination of their financial ability to perform this contract. This has caused me to determine them non-responsible. Please advise me if you will issue a Certificate of Competency in this case. In support of this determination, I have enclosed the following:

1. Prospectus

2. Confirmation of Oral Bid and Initial Sealed Bid

3. Oral Auction Record

4. History by Fiscal Year of Volume Under Contract with Thomas Creek. (This depicts the dramatic increase in volume and value for FY 1990.)

5. Correspondence between the Mt. Hood N.F., Thomas Creek, and Thomas Creek's attorney, Mr. Joseph Yazbeck.

If you need further information, please contact Sandy Marquis at (503) 666-0782.

Sincerely,

Sandra E. Marquis /s/

for THOMAS L. ORTMAN

Contracting Officer

By letter dated December 7, 1990, the Small Business Administration notified Thomas Creek of the referral as follows (in part):

Dear Mr. Walker:

Confirming telephone conversation of this date with Ms. Davidson, you are advised that the Government Agency listed above proposes to reject your firm's bid on referenced Timber Sale because of your inability to demonstrate your
[x] Financial Ability    [ ] Capacity
[ ] Both Financial Ability and Capacity

to perform satisfactorily.

The Small Business Administration has been notified of the circumstances so that we may perform an independent survey of your firm to consider the issuance of the Certificate of Competency (COC), if you so desire.

\*      \*      \*      \*      \*      \*

Our specialists making the survey may indicate to you during the survey other items that will be needed, however, you should remember that the burden of proof concerning competency rests with you.

Since the COC procedure allows a comparatively short period of time to make this COC review, time is of the essence. It will be necessary for you to move quickly. We suggest that you expedite all you can the gathering of the required information and the prompt submission of your application and other data. After we have received and reviewed your COC application, a specific day and time will be arranged with you for us to conduct our on-site survey.

Enclosed are the following forms which are used in applying for a COC:

\*      \*      \*      \*      \*      \*

If we have not received your properly completed COC application and data requested on Enclosure #1 in this office by close of business on the fifth working day after you receive this letter, this will be interpreted as your declination to apply for a COC. SBA will then advise the Contracting Officer that he may proceed with award to the next bidder.

You are requested to call this office immediately upon receipt of this letter and advise if you intend to apply for a COC. If you do not intend to apply, please send us a letter immediately stating your decision not to apply. We would appreciate knowing the reasons for your decision, if you would care to tell us.

Sincerely,

DHS /s/

David H. Sorber

Certificate of Competency Specialist

Office of Assistant Regional Administrator for Procurement Assistance

Region X

By letter dated December 12, 1990 to David H. Sorber, Small Business Administration, plaintiff's counsel proposed a limited disclosure of financial records as follows:

Dear Mr. Sorber:

Enclosed is a copy of my letter to Mr. Ortman dated December 7, 1990. We believe that the requested documents will show, beyond a pale, that Thomas Creek is financially responsible.

However, despite the fact that Mr. Walker believes that this entire process is being brought on by Mr. Ortman's desire to please Thomas Creek's competitors, we believe that we have a solution to this problem. Mr. Walker is willing to show to you and you alone his current and previous financial statements. He was not willing to show these documents to anyone from the Forest Service because he did not believe that the request was made in good faith. His belief was not only supported by reports from his friends in the Forest Service, but also by a reasonable reading of the regulations

which only requires that these types of audits take place when there is a default on another sale.

After discussing the other matter with you Mr. Walker is convinced that you are trustworthy and he would be willing to allow you to review his financial statements and his tax returns. However, he is unwilling to merely send these documents to you, and he would prefer that you review them in his office or that you make an appointment with him and that you review them in your office. He is very concerned about his competitors seeing these documents and he is unwilling to leave them where they would be subject to a Freedom of Information Act request. In fact, he is sure that showing them to the Forest Service would be the same as showing them to his competitors. I believe that this solution is fair to both parties and will give you irrefragable evidence of Thomas Creek's ability to perform.

Very truly yours,

Joseph A. Yazbeck, Jr.

This limited disclosure was not acceptable to the Small Business Administration as persons other than Mr. Sorber would be involved in the decisional process. Plaintiff then determined not to apply for a Certificate of Competency. By letter dated December 18, 1990, the Small Business Administration so notified the Forest Service and concluded that "[a]ccordingly, this case has been closed and you may proceed with your procurement activity."

By letter dated February 4, 1991, the contracting officer notified plaintiff that its bid was rejected and its bid bond was returned as follows:

On October 26, 1990, I requested financial information in order to make an affirmative determination of Thomas Creek's financial ability to perform the Sheep SSF Timber Sale Contract.

Since you have failed to submit this information, and the Small Business Administration will not issue a Certificate of Competency in your behalf, I am unable to make an affirmative determination as required by CFR 223.101.

Your bid is hereby rejected. I have enclosed your bid bond as it is no longer needed.

An award of the Sheep SSF Timber Contract is now contemplated to occur on or after February 19, 1991. By this proceeding plaintiff seeks injunctive relief, concerning the nonresponsibility determination, preventing award to any other purchaser given plaintiff's high bid status.

### Discussion

Plaintiff seeks equitable relief in the form of a rejection of the determination of its nonresponsibility on this timber sale so, as the high bidder, it would then receive the award.

■ With the submission of a bid in response to the solicitation in this matter, the government incurred the implied contractual obligation to afford Thomas Creek's submission fair and honest consideration. *United States v. Grimberg Co.*, 702 F.2d 1362 (Fed.Cir.1983). This contractual fair and honest consideration obligation extends throughout the procurement process after bid submission and thus encompasses the actions of the SBA with respect to the issuance of a Certificate of Competency. *See* 28 U.S.C. § 1491(a)(3); *United States v. Grimberg Co.*, 702 F.2d 1362 (Fed.Cir. 1983); *Electro–Methods, Inc. v. United States*, 728 F.2d 1471 (Fed.Cir.1984); *ATL, Inc. v. United States*, 735 F.2d 1343 (Fed. Cir.1984); *ATL, Inc. v. United States*, 736 F.2d 677 (Fed.Cir.1984); *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052 (1st Cir.1987).

■ However, the standard of review of preaward contract claim decisions is limited. Where the procurement decision has a rational or reasonable basis, it is not contemplated that the Claims Court will intervene. *Medical Devices of Fall River v. United States*, 19 Cl.Ct. 77 (1989).

On the basis of its unblemished past performance of timber sale contracts and its current excess bonding capacity, plaintiff asserts that the contracting officer violated the contractual obligation of fair and honest bid consideration when she determined

that a financial ability analysis was required in order to reach a conclusion whether Thomas Creek had the requisite responsibility to perform the Sheep SSF Timber Sale and pay for the timber involved. Plaintiff's decision not to provide its financial information was based upon Mr. Walker's fear that the data would, in some manner, reach Thomas Creek's competitors.

The record evidence shows the contracting officer concluded that a financial ability analysis was necessary for a responsibility determination because plaintiff's backlog timber volume under existing contracts at the time of the Sheep SSF sale procurement was substantially in excess of its historical past performance situation. Thus, the contracting officer discounted past performance as a basis for the current responsibility determination required for the Sheep SSF sale.

Plaintiff counters with an explanation that the increased timber backlog volume was essentially caused by the sale restrictions relating to the Spotted Owl problem in the first half of fiscal year 90, which resulted in contract awards being concentrated in the final quarter of this fiscal year. Plaintiff urges that its timber volume under contract since 1984 has been relatively constant, on a yearly basis, such that its successful past performance should obviate any need for a financial ability analysis.

█ It is concluded that the contracting officer's decision that a financial ability analysis was required in order to reach a current responsibility determination with respect to the Sheep SSF sale did not violate the contractual obligation for fair and honest bid consideration.

The remaining timber volume under Thomas Creek's contracts at the time of the Sheep SSF sale was substantially in excess of past historical volume at the end of each fiscal year. The contracting officer's request for financial data had a rational basis. Before a timber sale is awarded, it is reasonable for the contracting officer to be provided information demonstrating that the purchaser has the current fi-

nancial responsibility to meet the contractual obligations involved. Failure to provide relevant information in one's possession can appropriately lead to an adverse conclusion. *See Interstate Circuit v. United States*, 306 U.S. 208, 226, 59 S.Ct. 467, 474, 83 L.Ed. 610 (1939).

Plaintiff argues that the Forest Service Handbook does not support a financial ability analysis in the situation presented. However, the Handbook does list an "Increase in Total Volume" as a factor indicating a possible need for an analysis. Moreover, in making a responsibility determination, the contracting officer must be afforded wide discretion. *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 576, 492 F.2d 1200, 1205 (1974); *Trilon Educational Corp. v. United States*, 217 Ct.Cl. 266, 271, 578 F.2d 1356, 1358 (1978). Reaching a decision as to the financial information required in order to determine financial responsibility is clearly within the zone of discretion reserved to the contracting officer.

Mr. Walker's fear that providing this financial information to the Forest Service would result in his competitors obtaining it cannot justify the failure to produce it. As Mr. Walker recognized, the information would enable the recipient to determine how much Thomas Creek could afford to bid on timber sale contracts and how much timber Thomas Creek would be capable of maintaining under contracts at any one time. This is the information the contracting officer determined she needed to resolve whether Thomas Creek had the requisite financial responsibility with respect to an additional timber sale award. The Forest Service treats such information provided by contractors as confidential. Such confidential information is exempted from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b)(4). *See also* Executive Order No. 12600, 52 Fed.Reg. § 23782 (Pre-disclosure Notification Procedures for Confidential Commercial Information). Moreover, it must be presumed that public officials will perform their duties in a proper manner. *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 746, 572 F.2d

786, 805 (1978). Improper release of confidential information could result in criminal sanctions under 18 U.S.C. § 1905.

In these circumstances, the contracting officer's rational need for financial information to make a responsibility determination cannot be rejected on the basis of plaintiff's unsupported fear of disclosure.

Given the existence of a rational basis for the contracting officer's procurement determination that a financial ability analysis was required and plaintiff's decision not to produce the material requested to the Forest Service, no valid basis has been shown for the equitable relief sought.[1]

It is ORDERED that:

(1) Plaintiff's motion for preaward contract claim equitable relief is denied;

(2) Final judgment shall be entered dismissing the complaint in this matter, with no costs to be assessed.

---

**1.** Citing *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969), defendant argues that judicial action in this matter is precluded as, by deciding not to apply for a Certificate of Competency from the Small Business Administration, plaintiff failed to exhaust its administrative remedies. Under 15 U.S.C. § 637(b)(7)(A), as Thomas Creek is a small business it was necessary for the contracting officer to refer the responsibility matter to the Small Business Administration for a decision as to whether a Certificate of Competency would be issued which would be binding on the contracting officer. *See Ulstein Maritime, Ltd.* v. *United States, supra.* However, 15 U.S.C. § 637(b)(7)(C) provides "but nothing in this paragraph shall require the processing of an application for certification if the small business concern to which the referral pertains declines to have the application processed." In this circumstance, it is considered that the decision by Thomas Creek not to proceed with the Small Business Administration certificate procedure should not preclude it from seeking preaward contract claim relief, pursuant to 28 U.S.C. § 1491(a)(3), from the contracting officer's unfavorable responsibility determination.